**Julius James NASH, Petitioner-Appellee,**

v.

**Thomas ISRAEL, Bronson C. LaFollette, Respondents-Appellants.**

**No. 82–1633.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 16, 1982.

Decided May 19, 1983.

Kirbie Knutson, Asst. Atty. Gen., Wis. Dept. of Justice, Madison, Wis., for petitioner-appellee.

Robert H. Friebert, Milwaukee, Wis., for respondents-appellants.

Before BAUER and WOOD, Circuit Judges, and CAMPBELL, Senior District Judge.*

HARLINGTON WOOD, Circuit Judge.

This is an appeal from a final judgment of the district court granting petitioner-appellee's petition for a writ of habeas corpus. Based upon the following ratiocination, we affirm the district court's holding that Nash did not knowingly, intelligently, and voluntarily enter a plea of guilty to the charge of party to the crime of first degree murder.

**I**

On December 17, 1975, petitioner Nash and three other men, directed by Ira Haskins to murder Felix Winters,[1] took Winters by car to a predetermined location in Kenosha County, Wisconsin. Holder, the driver, stated that the car had a flat tire and pulled it to the side of the road. Holder, Garner, and Neely got out of the car. Nash remained in the car, but told Winters to get out because if he did not, both of them would be killed. Winters fled across the road where Neely shot him several times. Upon his return to Milwaukee, petitioner received some heroin and $45 for his participation in the crime.

On January 27, 1976, Nash and the others were charged with first degree murder. Garner entered into a plea agreement that included a commitment on his part to testify against the others; he pleaded guilty to second degree murder and received a ten-year sentence. The sentence was stayed, and Garner was placed on probation for seven years. Holder was tried and acquitted, presumably despite the testimony of Garner. Nash's jury trial was scheduled next; on August 24, 1976, the second day of trial, Nash withdrew his plea of not guilty and entered a guilty plea pursuant to an agreement containing the following terms: Nash was to plead guilty to first degree murder, receive a life sentence, and testify against Neely and Haskins in exchange for the prosecutor's commitment to recommend to the governor that Nash's life sentence be commuted to a term not to exceed forty years. The recommendation was to be made after Nash testified.

Both parties to the agreement fulfilled their obligations; after Nash testified at the trials, the district attorney recommended to Governor Lucey that Nash's sentence be commuted to a term of 25 years. The trial judge informed the Governor in writing that he had no objection to the commutation. Nash's petition was denied by Governor Lucey and a second petition was denied by his successor, Governor Schreiber.

On March 10, 1980, Nash filed with the trial court a motion for post-conviction relief pursuant to Wis.Stats. § 974.06, seeking leave to withdraw his guilty plea. Nash tendered several legal theories in support of his claim that the plea was not entered knowingly, intelligently, and voluntarily: (1) as a matter of law, the record of the guilty plea proceeding was inadequate to establish that he understood the charge he faced or the range of punishment to which

---

* The Honorable William J. Campbell, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

1. Winters apparently had robbed Haskins on a previous occasion. During a meeting on the morning of December 17, Nash suggested to Haskins that Winters be beaten, not murdered. Haskins rejected this advice.

he would be exposed; (2) as a matter of fact, the plea was invalid because it was tendered under the false assumption that the mandatory life sentence would be commuted to a term of imprisonment not to exceed 40 years; and (3) the plea was invalid because he was denied the effective assistance of counsel. The second and third arguments were premised upon the same factual allegation: that Nash was induced to plead guilty by his attorney's misrepresentation that within one year of the date of the sentencing, the Governor would commute the life sentence to a term of imprisonment not to exceed 40 years. The trial court denied the motion.

The Wisconsin Court of Appeals also rejected Nash's contention that the record failed to establish his understanding of the nature of the charge and the nature of his agreement with the prosecutor. That court did, however, remand the case to the trial court for an evidentiary hearing to determine whether Nash was induced to plead guilty by counsel's misrepresentation that commutation was guaranteed. The Wisconsin Supreme Court denied Nash's petition for review of the issues that were not remanded, and the United States Supreme Court denied certiorari.

In his petition for a writ of habeas corpus, Nash asserted that, as a matter of law, the record of the guilty plea proceeding was inadequate to establish that he understood (1) the nature of the charge, or (2) the consequences of the plea, defined to include the actual value of the prosecutor's commitment to recommend commutation. Nash did not present to the federal district court the second and third grounds for relief urged in the state courts, the resolution of which depend upon a factual allegation yet to be explored in an evidentiary hearing. The district court, finding both claims meritorious, granted the writ of habeas corpus, and ordered that Nash be permitted to

withdraw his plea of guilty, 533 F.Supp. 1378. The judgment was stayed for 90 days to allow the State to try Nash or to dispose of the matter against him by other means. Upon the State's motion, the judgment was stayed pending resolution of this appeal.

## II

The district court noted the Supreme Court's pronouncement in *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), that a prisoner who decides to proceed in federal court with his exhausted claims and deliberately sets aside his unexhausted claims risks dismissal of subsequent habeas corpus petitions. Having further noted the pending state court evidentiary hearing on the "somewhat related issue" of Nash's attorney's alleged misrepresentation that commutation was guaranteed, the district court deemed it appropriate to proceed to the merits of Nash's exhausted due process claims because the State had consented to such review and because the court had concluded that the writ would issue; "to withhold its issuance, under the circumstances, would serve no purpose."

Whether the State consented to review of the exhausted claims is irrelevant. Nash did not present the district court with a mixed petition.[2] The issue of the constitutional adequacy of the record established at the guilty plea proceeding has been fully exhausted in the state courts; Nash did not assert in his petition for a writ of habeas corpus, nor does he assert on appeal, that the guilty plea was constitutionally invalid because it was tendered under the false assumption, induced by counsel's misrepresentation, that commutation was guaranteed.

We do not believe that because the pending state evidentiary hearing may have been mooted by the district court's grant of

---

**2.** We question the district court's reliance on the State's consent to review of Nash's fully exhausted claims; because Nash had exhausted his state court remedies with respect to the

claims presented in his petition, we need not reach the issue whether the state attorney general may waive the exhaustion requirement of

habeas corpus relief,[3] the doctrine of comity has been undermined. The state court merely has been "saved the trouble of undertaking the useless exercise of ruling on unexhausted claims that are unnecessary to the disposition of [this] case." *Rose v. Lundy,* 455 U.S. 525 n. 2, 102 S.Ct. at 1207 n. 2 (Blackmun, J., concurring in the judgment).

### III

The district court correctly concluded that the question whether Nash knowingly, intelligently, and voluntarily waived his constitutional rights in entering a plea of guilty is a "mixed determination of law and fact that requires the application of legal principles to the historical facts ...." *Cuyler v. Sullivan,* 446 U.S. 335, 342, 100 S.Ct. 1708, 1715, 64 L.Ed.2d 333 (1980) (citations omitted). The legal principles are to be found in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and the historical facts are contained in the state court record of the guilty plea proceeding.

■ In *Boykin v. Alabama,* 395 U.S. at 242, 89 S.Ct. at 1711, the Supreme Court admonished state trial courts that the prerequisites of a valid waiver of constitutional rights must be "spread on the record." A federal court will not presume from a silent record the waiver of constitutional rights that takes place when a plea of guilty is entered in a state criminal proceeding:

> What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge dis-

charges that function, he leaves a record adequate for any review that may be later sought ... and forestalls the spin-off of collateral proceedings that seek to probe murky memories.

*Id.* at 243–244, 89 S.Ct. at 1712 (footnotes and citations omitted).

We proceed to an examination of Nash's first due process claim in light of the *Boykin* standard.

### IV

■ Nash argues that the guilty plea was involuntary because the trial judge failed to establish on the record that he understood the nature of the charge to which he was pleading guilty. The relevant portion of the guilty plea hearing transcript reveals that after the trial judge read the information to Nash,[4] the following exchange took place:

Q. Do you fully understand what the charge is that you have pled guilty to?

A. No.

Q. You do not understand the charge?

A. It's been explained to me, but I can't understand it.

Q. Do you understand that you've been charged with you and others causing the death of Felix Winters?

A. Yes.

Q. And you are aware that Felix Winters is dead?

A. Yes.

■ The precise issue, then, is whether, through this exchange, the trial judge fulfilled his duty to establish on the record that Nash understood the elements of the charge of party to the crime of first degree murder,[5] and that his conduct was suffi-

---

28 U.S.C. § 2254(b) when a mixed petition is presented to the federal district court.

3. It is unclear from the record whether this hearing has been held. We assume, for the sake of argument, that it has not.

4. The information read as follows:

That on December 17th, 1975, in the Township of Somers, in consert [sic] with others, this defendant did feloniously cause the death of Felix Winters, a human being, with

intent to kill said Felix Winters, contrary to section 940.01 and 939.05 of the Wisconsin Statutes.

5. First degree murder is statutorily defined as follows:

Whoever causes the death of another human being with intent to kill that person or another is guilty of a Class A felony.

Wis.Stats. § 940.01(1). Intent, defined as the "mental purpose to take the life of another human being," Wis.Stats. 940.01(2), is not an

cient to constitute the offense with which he was charged. It is elementary that a guilty plea, as an admission of all elements of the crime charged, cannot be truly voluntary unless the defendant possesses an understanding of "the law in relation to the facts." *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969). *See also Henderson v. Morgan,* 426 U.S. 637, 645, 96 S.Ct. 2253, 2257, 49 L.Ed.2d 108 (1976); *Smith v. O'Grady,* 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859 (1941).

The State argues that it was "reasonable" for the trial judge to "assume" that Nash's confusion centered on how he could be held responsible for Winters' death when another had committed the actual murder, and that, therefore, the trial judge reasonably directed his inquiries toward determining whether Nash understood that he was charged as a party to the crime of first degree murder. Proceeding with its argument on the assumption that the trial judge's explanation of this aspect of the charge was adequate, the State argues that the unexplained intent element could not have been the focus of Nash's confusion for several reasons: Nash received a copy of the complaint which specified that with intent to kill, he caused Winters' death; it is fair to assume that the information, which also contained a statement of the requisite

intent, was read to the jury in Nash's presence on the first day of trial; and the trial judge read the information to Nash at the outset of the guilty plea proceeding. Citing Justice White's concurring opinion in *Henderson v. Morgan,* 426 U.S. at 649–650 n. 2, 96 S.Ct. at 2259–2260 n. 2, the State argues that when a defendant pleads guilty to an offense with which he was formally charged and has received a copy of the charging document setting out the elements of the offense, he cannot claim later that he did not understand the charge to which he pleaded.

The State's argument is flawed in several crucial respects. Initially, we note that the extent to which the State now must resort to speculation and assumptions about what Nash did not understand reveals the inadequacy of the record. This is precisely the type of post-plea speculation that the *Boykin* requirement is designed to avoid.

Secondly, the State, simply put, is arguing a case that is not before us. The factors relied upon by the State to establish Nash's understanding of the intent element would be relevant in a case in which the defendant stated at the guilty plea proceeding that he fully understood the charge, but later claimed that he had not. However, we are presented with a case in which the intent element was not explained to Nash [6]

---

element of any other form of crime against life in Wisconsin.

The Wisconsin party to a crime statute, § 939.05, reads as follows:

(1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

(2) A person is concerned in the commission of the crime if he:

(a) Directly commits the crime; or

(b) Intentionally aids and abets the commission of it; or

(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable

consequence of the intended crime. This paragraph does not apply to a person who voluntarily changes his mind and no longer desires that the crime be committed and notifies the other parties concerned of his withdrawal within a reasonable time before the commission of the crime so as to allow the others also to withdraw.

**6.** The trial judge's constitutional duty to establish on the record the defendant's understanding of the charge does not depend upon whether the charge is complex or simple. However, the trial judge must be even more solicitous in fulfilling this duty when the charge is one not readily understandable by a layman. Although intent to kill may not appear to be a complex concept, under recent Wisconsin state court decisions, complex alternatives to a finding of specific intent to kill may support a conviction of first degree murder under the party to a crime statute. *See, e.g., State v. Sharlow,* 110 Wis.2d 226, 327 N.W.2d 692 (1983); *State v. Stanton,* 106 Wis.2d 172, 316

after he explicitly stated that he did not understand the charge.[7] We further note that the record of the guilty plea proceeding contains no admission by Nash that he intended Winters' death, that he knowingly aided and abetted an intentional murder, or that he entered into a conspiracy to commit the crime of first degree murder.[8]

Thirdly, the trial judge's proffered explanation of the charge was inadequate. The charge of party to the crime of first degree murder is exceedingly complex. To make an obvious point, causing, with others, the death of the victim is not an adequate explanation of either intentionally aiding and abetting or conspiring to commit an intentional murder. *See* Wis.Stats. § 939.05(2). At a minimum, the trial judge should have explained how Nash could be charged with and convicted of first degree murder when he did not directly commit the crime. He should have included adequate explanation of the elements of aiding and abetting and conspiring to commit the crime, and of how Nash's conduct fell within the purview of one or both of these definitions.

### V

We conclude that the state court finding that Nash understood the nature of the charge against him was "not fairly supported by the record." 28 U.S.C. § 2254(d)(8). The record reveals that Nash expressed a lack of understanding of a complex charge, that the trial judge made no attempt to ascertain specifically which element of the charge Nash did not understand, and that the questions asked were insufficient to establish Nash's understanding of the charge. Under the unusual circumstances of this case, the trial judge was compelled to probe Nash's unspecified confusion until the record demonstrated unequivocally that he understood all elements of the crime to which he was pleading guilty. Because the trial judge failed to do so, Nash's plea cannot stand as an intelligent, knowing, and voluntary admission of guilt. Accordingly, we affirm the district court's grant of habeas corpus relief.[9]

N.W.2d 134 (Ct.App.1982) (a party to the crime of first degree murder need not have acted with the mental purpose to take the life of the victim, or even have been aware that the perpetrator had the required intent; he need only have knowingly rendered aid in the commission of a crime, or intended, with his co-conspirators, the realization of a criminal objective).

7. On this basis, we also reject the State's argument that because the record reveals that Nash's attorney discussed the plea with him at length, Nash had adequate notice of what he was asked to admit. We note initially that Nash's counsel did not represent that the nature of the charge had been explained to Nash. Rather, defense counsel represented that he believed Nash understood what he was doing in entering the guilty plea. Even the former representation would carry no weight in the wake of Nash's explicit statement that he did not understand the charge. *Cf. Henderson v. Morgan,* 426 U.S. at 647, 96 S.Ct. at 2258.

8. Nor did Nash's "confession," relied upon by the State as a reliable indication that he understood the intent element of the crime, contain a statement that he intended to kill Felix Winters, intentionally aided and abetted the murder, or entered into a conspiracy to commit the murder. It is clear, as the State argued at the preliminary hearing, that Nash's knowledge of Haskins' intent to have Winters murdered, combined with his presence at the murder scene from which a willingness to assist may be inferred, might be sufficient to establish Nash's liability for the homicide under the party to a crime statute. However, the State appears to argue that because one of the three forms of intent necessary to sustain a conviction of the charge may be inferred from Nash's admitted conduct, he must have understood the intent element. The latter does not follow from the former. Evidence of guilt establishes a factual basis for the plea, not that the defendant understands the "law in relation to the facts."

9. Our disposition of this issue renders unnecessary review of Nash's claim that the trial judge failed to establish on the record that he understood the actual value of the prosecutor's commitment to recommend commutation.