**James H. GADDY, Petitioner-Appellant,**

v.

**Leland Q. LINAHAN, Jr.,
Respondent-Appellee.**

**No. 83–8660.**

United States Court of Appeals,
Eleventh Circuit.

Jan. 22, 1986.

See also, 570 F.Supp. 36.

William O. Miller, Atlanta, Ga., for petitioner-appellant.

Paula K. Smith, Atlanta, Ga., for respondent-appellee.

Before TJOFLAT and JOHNSON, Cir-

cuit Judges, and DUMBAULD *, District Judge.

TJOFLAT, Circuit Judge:

Petitioner, James H. Gaddy, is serving a life sentence in Georgia for the crime of malice murder.[1] He was convicted on a plea of guilty of having participated with his uncle, Henry James Gaddy, in the malice murder of Henry Franklin Black in Fulton County, Georgia, on February 23, 1978. Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1982) vacating his conviction and sentence on the ground that his guilty plea was involuntary; he claims that he did not understand the elements of the offense of malice murder when he tendered his plea. The district court denied the writ without an evidentiary hearing. Because the facts necessary to decide petitioner's claim have not been resolved, we vacate the district court's judgment and remand the case for an evidentiary hearing.

## I.

Petitioner and his uncle were arrested by the police, following a high speed automobile chase, in Griffin, Georgia, two days after Black's body had been found. Black had been stabbed to death in his residence, apparently during the course of a burglary. The record does not indicate who actually stabbed the victim.

On March 14, 1978, petitioner and his uncle were indicted by a Fulton County grand jury for malice murder and, in a separate indictment, for burglary. Shortly thereafter, Henry James Gaddy pled guilty to both charges. Petitioner's case was subsequently set for trial in Fulton County

Superior Court but was continued for reasons not disclosed by the record. His case was rescheduled for trial on April 19, 1978. On that day, petitioner appeared for trial, represented by an assistant public defender, Billy Spruell, and tendered a plea of guilty to malice murder pursuant to a plea agreement Spruell had worked out with the prosecutor. The agreement, which had not been reduced to writing, called for a plea of guilty to malice murder in exchange for the prosecutor's recommendation that petitioner be spared the death penalty and be given a life sentence, and a dismissal of the burglary indictment.

After announcing his intention to plead guilty, the court and the prosecutor questioned petitioner at considerable length, during which time they permitted him to consult his mother, who was present in open court. Petitioner's responses during the plea colloquy indicated that he had a limited mental capacity. Petitioner did not know his birth date; his mother had to advise the court that he had been born on September 20, 1946. Although he had attended school through the eighth grade, he could not read or write. He signed his name with an "X." He had worked as a brick mason but could not recall the name of his last employer. The court noted, for the record, petitioner's "limited education and his inability to read."

After a few introductory questions, the court directed the prosecutor to read the indictment to petitioner:

[The Prosecutor:] All right, sir.

Mr. Gaddy, this indictment alleges that on the 23rd day of February, 1978 that you did unlawfully and with malice afore-

---

* Honorable Edward Dumbauld, U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

1. In Georgia, the crime of malice murder is proscribed by O.C.G.A. § 16-5-1 (1982), which provides in pertinent part:

 **16-5-1. Murder; felony murder.**
 (a) A person commits the offense of murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being.

(b) Express malice is that deliberate intention unlawfully to take the life of another human being which is manifested by external circumstances capable of proof. Malice shall be implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart.

 . . . .

(d) A person convicted of the offense of murder shall be punished by death or by imprisonment for life.

thought cause the death of Henry Franklin Black, a human being, by stabbing him with a knife; contrary to the laws of said State, the good order, peace and dignity thereof. Do you understand what that means?

MR. GADDY: That's right.

Q Mr. Gaddy, you are represented by Mr. Spruell of the public defender's office?

A That's right.

Q And have you talked to Mr. Spruell about this murder charge?

A Yes, sir.

Q And do you understand the charge and everything relating to it?

A That's right.

Petitioner went on to acknowledge, in response to the prosecutor's questioning, that he knew that by pleading guilty he was waiving his constitutional rights, including his right to be tried by a jury, to cross-examine the prosecution's witnesses, to present evidence, and to testify in his own behalf. He also acknowledged that, despite the prosecutor's promise to recommend a life sentence, the court could sentence him to death. Then, after assuring the prosecutor that he was pleading guilty freely and voluntarily, petitioner, in the colloquy that followed, told the prosecutor that he had taken some drugs earlier in the day:

[By the Prosecutor]:

Q Mr. Gaddy, are you under the influence of any drugs or alcohol?

A I drink a lot.

Q Have you today?

A No, sir.

Q Have you had any drugs at all today?

A Yes, sir.

Q Take any kind of medication today?

A No, sir.

The prosecutor did not ask the petitioner what drugs he had taken that day. Nor did the court pursue the point when it questioned petitioner moments later.[2] The prosecutor then concluded his examination of petitioner:

Q Are you completely—have all your faculties, you understand everything that's going on here?

A I don't understand all of it but I understand most of it.

Q You understand you're pleading guilty to murder?

A Yes, sir.

Q Mr. Gaddy, to this charge of murder ... how do you plead; guilty or not guilty?

A Guilty.

At this point, the prosecutor had petitioner and his attorney sign the indictment. Petitioner signed with an "X"; his mother witnessed his mark by affixing her signature to the indictment. Thereafter, the court addressed petitioner:

THE COURT: You understand what you are charged with in this indictment?

MR. GADDY: Yes, sir.

THE COURT: Tell me what you are charged with.

MR. GADDY: Murder.

THE COURT: What kind of sentence could be imposed on a person convicted of murder?

MR. GADDY: Life or death.

THE COURT: Have you had a chance to talk with your lawyer about this case?

MR. GADDY: Yes, sir.

THE COURT: After talking with your lawyer, did you make up your own mind about whether to plead guilty?

MR. GADDY: Yes, sir.

. . . .

(Whereupon a recess was taken in the hearing.)

. . . .

THE COURT: After talking with your lawyer and talking with your mother, did you make up your own mind about pleading guilty on this charge?

MR. GADDY: Yes, sir.

---

**2.** That petitioner had ingested cocaine did not surface until the Superior Court of Upson County conducted an evidentiary hearing on petitioner's application for a writ of habeas corpus twenty-two months later. *See infra* text at 940.

The court then addressed petitioner's counsel:

THE COURT: Mr. Spruell, are you satisfied that James Herschel Gaddy understands the charges against him?

MR. SPRUELL: Yes, sir.

THE COURT: Are you satisfied he understands this proceeding; that by entering a plea of guilty he gives up the right to contest the issues before a jury or other trier of fact?

MR. SPRUELL: Yes, sir.

THE COURT: Are you satisfied that the plea tendered by James Herschel Gaddy ... is voluntary?

MR. SPRUELL: Yes, sir.

The court never asked Spruell whether he had explained the elements of the crime of malice murder to petitioner and how the prosecutor might establish those elements. Nor did the prosecutor, during the hearing, state what he expected the evidence would show if the case proceeded to trial. The plea colloquy ended with the court finding that petitioner had tendered his guilty plea freely and voluntarily, accepting his plea, and adjudging him guilty of malice murder. The court then sentenced petitioner to imprisonment for life in accordance with the prosecutor's recommendation.

Within two days, petitioner decided to withdraw his plea of guilty and so informed his attorney. Spruell advised him that there was nothing else that could be done and consequently did not pursue the matter. Petitioner subsequently retained another attorney and, on November 14, 1978, moved the sentencing court for leave to withdraw his guilty plea. Declaring his innocence, petitioner said he pled guilty because of the threat of a death sentence and also because of his "total ignorance." Citing excerpts from his plea hearing, petitioner maintained "[t]hat the plea given ... was entered under a misapprehension as to the offense to which [he] was pleading guilty." Petitioner's motion was denied.

One year later, in November 1979, petitioner applied to the Superior Court of Upson County, Georgia for a writ of habeas corpus. He alleged that his malice murder conviction was invalid under the fourteenth amendment due process clause because it was based on an involuntary guilty plea. Petitioner claimed that his plea was involuntary because: (1) he was under the influence of drugs at the time he entered the plea; (2) he was coerced into entering the plea by his attorney and the prosecutor who advised him that if he did not plead guilty he would get the electric chair; and (3) he did not understand the elements of the offense of malice murder.[3]

The state habeas court conducted an evidentiary hearing on February 18, 1980, at which the petitioner and his trial attorney, Billy Spruell, testified. Petitioner testified that he had ingested cocaine while in jail on the morning he entered his guilty plea. He said that he took cocaine that morning because he was nervous and anxious about his upcoming trial. Spruell testified that he had no knowledge that petitioner had ingested cocaine that morning and that it was not apparent to him that the petitioner was under the influence of any drug at the time he entered his plea. Spruell did not recall petitioner's affirmative response to the prosecutor's question as to whether petitioner had taken drugs that day.

The testimony at the evidentiary hearing, however, shed no light upon the degree, if any, to which petitioner had understood the elements of malice murder at the time he tendered his plea. Petitioner testified that, prior to entering his plea, he spoke with Spruell two or three times. Petitioner knew that his case was scheduled for trial on April 19, 1978, the date he pled guilty, and said that he intended to go to trial. Petitioner did not indicate precisely when he changed his mind and decided to plead guilty; all he could say was that he decided to offer the guilty plea that day. He gave no indication as to when Spruell informed

---

**3.** Petitioner also argued that his constitutional rights were violated because due process required that a plea hearing be conducted solely by a judge. The state habeas corpus court summarily rejected this contention. *See infra* note 8.

him of the plea agreement he had negotiated with the prosecutor.

Petitioner testified that, after the plea hearing began, he did not understand everything that took place. He knew that he was pleading guilty to "murder," but he did not understand the meaning of all of the "different words" used by the prosecutor and the court during the plea colloquy.

Spruell's testimony did not indicate whether he and petitioner ever discussed the elements of malice murder. Acknowledging that petitioner was "not very intelligent" and was "mentally retarded to some degree," Spruell nonetheless felt that petitioner "understood what was going on." Though Spruell said that he thought that petitioner's conduct on the night of the crime constituted malice murder,[4] he did not testify that he explained his conclusion to petitioner. They "talked about jury trials ... and about the possibility of what [would] happen[] to [petitioner] if he had a trial, and what [would] happen[] to him if he entered a plea." Spruell concluded his testimony by stating that he believed that petitioner pled guilty to malice murder knowingly and voluntarily and that petitioner wanted to plead guilty rather than insist upon a jury trial, in part, because he was afraid that the jury might recommend the death penalty.

The state habeas court denied petitioner's application for relief. The court found that the trial judge had made an "extensive and comprehensive" examination of the pe-

titioner at the time of the plea. The court concluded that the petitioner entered his plea after being fully advised of all of his constitutional rights. On the question of whether petitioner was under the influence of cocaine during the plea hearing, the court concluded that the trial judge had made an implicit finding that any drugs petitioner may have taken had not impaired his ability to understand the crime of malice murder, the purpose of the plea hearing, and the consequences of pleading guilty. The court upheld this implicit finding, stating that

the mere fact that [petitioner] had used a drug on the day of the plea and the mere fact that he said he did not understand all that was going on is not *conclusive* on the issue of whether the plea was entered intelligently and voluntarily, and the trial judge was free to find otherwise from the extensive examination of the accused which he conducted at the time.

The court further concluded that petitioner pled guilty "freely and voluntarily," that he had "an understanding of the nature of the charge and consequences of the plea," and that his plea had not been coerced. Petitioner did not seek a certificate of probable cause from the Georgia Supreme Court so that he could appeal the superior court's decision. *See* O.C.G.A. § 9–14–52(a), (b) (1982).

■ Petitioner subsequently commenced this habeas corpus proceeding in the district court, presenting the same claim he

---

**4.** In the transcript of the state habeas hearing Spruell's only reference to the elements of the crime of malice murder was made in response to a question whether petitioner had admitted killing Henry Franklin Black prior to pleading guilty:

 Q Did he ever indicate to you, Mr. Spruell, his complicity in this case, at all?

 A (no response).

 Q Did he maintain his innocence to you, or state to you that he was guilty?

 A Well, I have represented a lot of people who have told me that they were innocent, that they were not guilty, and then—and then I would ask them about the facts of the case, and they would describe a factual situation that made—that fulfilled every element of the crime.

 Q Yes, sir.

 A (continuing) So, that's a legal interpretation, if he said that he wasn't guilty and then indicated to me that he was present, that he was a party along with the other person. That's my best recollection of it.

 Q Did he indicate that to you?

 A That's—my best recollection is that—that—I don't remember the facts of this case, but I remember an indication that he was with another man, that they went to the victim's home, there was some sort of fight, the man was killed with a knife. There was an allegation by the State that the man had been robbed. I think that may, or may not have been apparent, but at any rate, all the indications were that he was a party to that—at least present.

had litigated in the state habeas court. Although petitioner did not give the Georgia Supreme Court an opportunity to pass on his claim before presenting it to the federal courts, as required by 28 U.S.C. § 2254(b) (1982), his claim has been "exhausted" because the Georgia Supreme Court would now refuse to consider it on the merits, as untimely.[5] *See Engle v. Isaac*, 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 1570 n. 28, 71 L.Ed.2d 783 (1982); *see also Darden v. Wainwright*, 725 F.2d 1526, 1533–39 (11th Cir.1984) (en banc) (Tjoflat, J., dissenting), *vacated and remanded, —— U.S. ——*, 105 S.Ct. 1158, 84 L.Ed.2d 311 (1985) (on remand the en banc court, 767 F.2d 752, partially reinstated the panel opinion).

▉▉▉ The district court adjudicated petitioner's claim without an evidentiary hearing. Because the State, in its response to petitioner's application for a writ, did not allege that petitioner had failed to pursue a possible state court appeal and therefore should be barred from litigating his claim in federal court,[6] the district court ignored petitioner's state court "procedural default" and proceeded directly to the merits of petitioner's claim.[7] The district court did not convene an evidentiary hearing because it felt that petitioner had been accorded a "full and fair hearing" on his claim in state court, *see* 28 U.S.C. § 2254(d)(2) (1982), and that the state habeas court's conclusion that petitioner had

made an informed, knowing, and voluntary guilty plea was fully supported by the record, i.e., the transcripts of petitioner's plea hearing and his subsequent state habeas hearing.

Addressing the question of whether petitioner was under the influence of cocaine during his plea hearing, the district court accepted the state habeas court's conclusion that the trial judge had implicitly found that any drugs petitioner may have taken did not impair his ability to understand the nature of the plea proceeding and to enter a plea of guilty knowingly and voluntarily. The district court did so in light of the "extensive questioning" of petitioner at the plea hearing and the trial judge's "ample opportunity to observe petitioner's demeanor, and assess for himself whether petitioner was in control of his faculties and reasoning processes."

With respect to petitioner's claim that he was never informed of the elements of the crime of malice murder, the district court held that the prosecutor's reading of the indictment to petitioner adequately informed him of the crime and its elements, thus satisfying the constitutional requirement of due process. The court stated that

[w]hen the indictment was read to Petitioner at the hearing, specific reference was made to the element of malice aforethought in connection with the charges. Although this term was not defined for

---

**5.** O.C.G.A. § 9–14–52(b) (1982) requires that a certificate of probable cause to appeal be sought within 30 days from the entry of the order denying petitioner relief. We are unaware of any rule or case law which would permit petitioner presently to seek such a certificate from the Georgia Supreme Court.

**6.** We intimate no view as to which standard, the "deliberate bypass" rule of *Fay v. Noia*, 372 U.S. 391, 438–39, 83 S.Ct. 822, 848–49, 9 L.Ed.2d 837 (1963), or the "cause and prejudice" requirement of *Wainwright v. Sykes*, 433 U.S. 72, 87–91, 97 S.Ct. 2497, 2506–08, 53 L.Ed.2d 594 (1977), would have been appropriate to apply to determine whether petitioner was barred from federal habeas review of his state conviction. *Cf. Blake v. Kemp*, 758 F.2d 523, 544–47 (11th Cir.) (Tjoflat, J., dissenting) (discussing possible application of the *Fay* and *Sykes* standards), *cert.*

*denied, —— U.S. ——*, 106 S.Ct. 374, 88 L.Ed.2d 367 (1985).

**7.** The State also did not raise the issue on appeal. Although we are required to notice sua sponte absences of subject matter jurisdiction, *see Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 740, 96 S.Ct. 1202, 1204–05, 47 L.Ed.2d 435 (1976), a petitioner's failure to pursue an appeal of a state habeas court's denial of his writ does not defeat the subject matter jurisdiction of a federal court to rule on his petition. The procedural default doctrine of *Fay* and *Sykes* is not jurisdictional but rather is based on considerations of comity and the orderly administration of criminal justice. *See Fay v. Noia*, 372 U.S. at 430–38, 83 S.Ct. at 844–49. Therefore, because the State has not raised the procedural default issue before the district court or on appeal, we will not address the matter.

Petitioner's benefit, it is not a term of art whose meaning differs from that which a lay person would normally give it. Moreover, the term "murder" itself has a well-known common meaning. Petitioner was specifically asked at the plea hearing whether he understood the nature of the charges, and he stated that he did.

■■■ Petitioner's principal contention in this appeal is that the district court erred in concluding that he was adequately informed of the elements of malice murder. He maintains that the prosecutor's note reading of the indictment did not suffice. He contends that the term "malice aforethought," as it appeared in the indictment, is not self-explanatory and is incomprehensible to a layman, particularly one of limited mental capacity, without further explanation. We agree with petitioner on this point and remand the case to the district court to determine to what extent, if any, petitioner was informed prior to the plea hearing about the elements of the crime of malice murder.[8]

## II.

### A.

■■■ The fourteenth amendment due process clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights. *Burden v. Alabama,* 584 F.2d 100, 101–02 (5th Cir.1978).[9] "A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, ... or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." *Henderson v. Morgan,* 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 2257 n. 13, 49 L.Ed.2d 108 (1976) (citation omitted). A plea is not voluntary in this latter sense, "unless the defendant received 'real notice of the true nature of the charge against him.'" *Id.* at 645, 96 S.Ct. at 2257 (quoting *Smith v. O'Grady,* 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941)).

■■■ The defendant receives "real notice" of the charge when he has been informed of both the nature of the charge to which he is pleading guilty and its elements. *See Henderson v. Morgan,* 426 U.S. at 645–47, 96 S.Ct. at 2258–59. This is so because a plea of guilty represents, in essence, an admission as to each and every element of the offense. *See McCarthy v.*

---

**8.** Petitioner asserts two additional claims. First, he argues that due process required the state trial judge to "address the defendant personally in open court" and conduct the entire plea colloquy as provided in Fed.R.Crim.P. 11 and that allowing the prosecutor to conduct a portion of the plea inquiry in his case violated the Constitution. We reject petitioner's contention. The procedure prescribed by Rule 11 is not the constitutional minimum required for a knowing and voluntary plea; it merely constitutes the procedure for federal courts. *Frank v. Blackburn,* 646 F.2d 873, 882 (5th Cir.1980) (en banc), *modified on other grounds,* 646 F.2d 902 (5th Cir.) (per curiam), *cert. denied,* 454 U.S. 840, 102 S.Ct. 148, 70 L.Ed.2d 123 (1981). Thus, Rule 11 is not binding on the states; a "wide range of constitutional plea procedures [are] available to the state courts." *Id.; see also Owens v. Wainwright,* 698 F.2d 1111, 1113 (11th Cir.) (per curiam), *cert. denied,* 464 U.S. 834, 104 S.Ct. 117, 78 L.Ed.2d 116 (1983).

We also reject petitioner's claim that, because petitioner was under the influence of drugs at the time he pled guilty, his resultant confused mental state rendered his plea involuntary. At the state habeas hearing, petitioner testified that his use of cocaine several hours before tendering his plea clouded his ability to think and concentrate. Spruell, petitioner's defense counsel at the time his plea, testified that petitioner did not appear to be under the influence of drugs and that he possessed his normal mental faculties. After weighing the testimony, the state habeas court accepted the trial judge's implied determination that petitioner's mental faculties were unimpaired. The district court upheld this finding. The state habeas court's finding of fact must be presumed to be correct if supported by substantial evidence at a full and fair hearing. 28 U.S.C. § 2254(d) (1982). Because there was substantial evidence in the record generated from a full and fair hearing upon which the state habeas court could base its finding of fact, we reject petitioner's claim regarding the use of cocaine.

**9.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969). In addition, the defendant should understand how his conduct satisfies those elements. *United States v. Frye,* 738 F.2d 196, 199 (7th Cir.1984).

 Due process does not require that the defendant, in pleading guilty, be informed of each element of the crime in question *at the plea hearing. See Moore v. Balkcom,* 716 F.2d 1511, 1525 (11th Cir. 1983), *cert. denied,* 465 U.S. 1084, 104 S.Ct. 1456, 79 L.Ed.2d 773 (1984). The defendant may receive detailed information about the elements of the offense beforehand.

Most commonly, his attorney provides such information. *Id.* Thus, for a plea to be knowing and .voluntary, the defendant must be informed of the elements of the offense either at the plea hearing or on some prior occasion, and he must understand them.[10]

 The extent to which the elements must be explained to the defendant varies with the circumstances:

> Instead of testing the voluntariness of a plea by determining whether a ritualistic litany of the formal legal elements of an offense was read to the defendant, ...

---

**10.** The State argues that, although the record does not indicate that petitioner's attorney informed petitioner of the elements of malice murder, the district court could assume that he did so. In support of this argument the State directs our attention to *Marshall v. Lonberger,* 459 U.S. 422, 436, 103 S.Ct. 843, 852, 74 L.Ed.2d 646 (1983), where the Supreme Court, quoting from *Henderson v. Morgan,* 426 U.S. 637, 647, 96 S.Ct. 2253, 2258, 49 L.Ed.2d 108 (1976), noted that, in determining the voluntariness of a guilty plea it " 'may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.' " We, however, do not view such an assumption appropriate under the circumstances of this case.

In *Marshall,* the prosecutor introduced a prior conviction into evidence to establish an aggravating circumstance necessary to obtain the death penalty, and the petitioner was sentenced to death. He claimed in his habeas petition that the prior conviction should not have been admitted because it was based upon an involuntary guilty plea. He maintained that, at the time of the plea, he was unaware that he was pleading guilty to the charge of attempted murder because, during the plea colloquy, the trial judge asked him if he was pleading guilty to "attempt ... with a knife." 459 U.S. at 427, 103 S.Ct. at 847. The Supreme Court, on certiorari, held that the writ should not issue because the plea was voluntary. In reaching this conclusion, the Court gave great deference to the state trial court's finding, when admitting the prior conviction into evidence, that the defendant was an intelligent individual who was experienced with the criminal process and had been well represented at the time he pled guilty to murder. This finding had been based upon the trial court's review of the transcript of petitioner's plea hearing.

In the present case, petitioner was described by his attorney at the state habeas hearing as "mentally retarded to some degree," an assess-

ment certainly supported by petitioner's responses at his plea hearing. Petitioner more resembled the state prisoner of "unusually low mental capacity" whose petition was reviewed by the Court in *Henderson v. Morgan,* 426 U.S. 637, 647, 96 S.Ct. 2253, 2259, 49 L.Ed.2d 108 (1976). In *Henderson,* petitioner, having been indicted on a charge of first-degree murder, pled guilty to second-degree murder. After exhausting his state court remedies, he filed a habeas petition in federal district court alleging in part that he was never informed that intent to cause death was an element of second-degree murder. Relying on the state court record, the district court denied relief. The court of appeals, however, remanded the case for an evidentiary hearing to determine the extent of petitioner's awareness of the elements of the crime. On remand, the district court found that petitioner had not been informed of the elements of second-degree murder and set aside his plea as involuntary. The court of appeals, and the Supreme Court, on certiorari, both affirmed. The Supreme Court held that, for a guilty plea to be voluntary, a defendant must be informed of the elements of his offense prior to entering the plea. The Court did note that, under certain circumstances, the trial court may assume that the defendant has been informed of the elements by his attorney but viewed the petitioner's limited mental capacity as mitigating against such an assumption. *Id.* at 647, 96 S.Ct. 2258–59. In addition, the district court specifically found that petitioner had not been informed of the elements of the offense. In light of *Henderson,* we cannot assume that petitioner's attorney informed petitioner of the elements of malice murder before he entered his guilty plea; instead, as did the court of appeals initially in *Henderson,* we vacate the district court's order denying the writ and remand the case for an evidentiary hearing to determine the extent of petitioner's knowledge at the time he entered his guilty plea, if any, of the elements of malice murder.

the court should examine the totality of the circumstances and determine whether the substance of the charge, as opposed to its technical elements, was conveyed to the accused. *Henderson v. Morgan,* 426 U.S. at 644, 96 S.Ct. at 2257. Factors to be considered in determining whether a plea is voluntary include "the degree of confusion or incapacity demonstrated by the defendant, the information available to the defendant to help him make his decision, and the importance of the defendant's calculations of the legal principles which he did not comprehend." *Allard v. Helgemoe,* 572 F.2d 1, 3 (1st Cir.) (footnote omitted), *cert. denied,* 439 U.S. 858, 99 S.Ct. 175, 58 L.Ed.2d 166 (1978).

■■■■ At the very least, due process requires that the defendant, prior to tendering a plea of guilty, receive a description of the "critical elements" of the charged offense, such as the element defining the requisite intent. *Henderson v. Morgan,* 426 U.S. at 647 n. 18, 96 S.Ct. at 2258 n. 18. An explanation of criminal intent is necessary because intent is a complex concept not readily understandable by a layman. *See Nash v. Israel,* 707 F.2d 298, 302 n. 6 (7th Cir.1983). Though a rote reading of the indictment or charging document may be sufficient to put a defendant on notice of the elements of the charge in some circumstances, *see Paulson v. Black,* 728 F.2d 1164, 1166 (8th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 325, 83 L.Ed.2d 262 (1984), it is inadequate when the defendant has minimal intelligence, the charge is complex, and the sentence to be imposed is substantial. *See Alessi v. United States,* 593 F.2d 476, 480 (2d Cir.1979) ("[e]ven if we assume that the indictment was legally sufficient, this does not eliminate the need for making sure the defendant understands it"). Similarly, conclusory responses by a defendant and his counsel to a court's inquiry into whether the defendant "understands" the charge is not sufficient to establish that the defendant actually has knowledge and understanding, particularly when he possesses minimal intelligence. *See Monroe v. United States,* 463 F.2d 1032, 1035 (5th Cir.1972). In sum, the quality of the explanation of the offense and its elements must be such that, in the circumstances of the case, it is clear that the defendant knowingly and voluntarily entered his plea of guilty.

**B.**

The record indicates that petitioner is illiterate and possesses minimal mental capacity. His own attorney characterized him as "mentally retarded to some degree." One month after being indicted on the charge of malice murder, petitioner faced the awesome decision of whether to plead guilty to an offense that would expose him to a possible death sentence. He had spoken with his attorney only two or three times. At his plea hearing, the only explanation of the charge to which he admitted guilt was a reading of the indictment, a brief one-sentence statement tracking Georgia's criminal statute defining malice murder and compressing the elements of the offense into a phrase: "did unlawfully and with malice aforethought cause the death of ... a human being." Petitioner answered with a cryptic "[t]hat's right." Throughout the plea colloquy, petitioner responded to what appeared to be routine questions by saying "that's right" or "yes, sir." At one point, he said that he did not understand all that was going on. Later, at the evidentiary hearing in the state habeas court, petitioner elaborated on his lack of understanding, testifying that he had not comprehended all of the words uttered during the plea hearing.

The transcripts of the plea hearing and the state habeas hearing fail to indicate whether petitioner had any understanding of the elements of malice murder, whether the facts of his case fit those elements, or whether the state had proof sufficient to obtain a conviction at trial. Neither petitioner nor his attorney represented at either hearing that they had discussed details of the crime. The record does reveal that defense counsel believed that petitioner's conduct fulfilled the elements of the crime of malice murder. *See supra* note 4.

But counsel never said that he had explained his conclusion to petitioner. All we learn from counsel's testimony is that he and the petitioner talked with each other about the constitutional rights petitioner would be waiving by pleading guilty and that petitioner would not have the benefit of the prosecutor's recommendation of a sentence of life imprisonment if petitioner opted for a trial.

The only evidence the State can rely on to establish the fact that petitioner knew and understood the elements of malice murder is the one-sentence indictment the prosecutor read to petitioner during the plea hearing. The terms "murder" and "malice aforethought," as they appear in the indictment, are not readily understandable by a layman, particularly one of minimal intelligence. They are complex legal terms, the discussion of which consumes pages of Georgia case law.[11] Considering the petitioner's lack of intelligence, his expressed confusion, the complexity of the case, and the extraordinary consequences of pleading guilty to malice murder, a more thorough explanation of the nature of the crime and its elements was required to satisfy the tenets of due process.

For the foregoing reasons, we vacate the judgment of the district court and remand the case for an evidentiary hearing on the question of what, if any, information petitioner received and understood, prior to pleading guilty, concerning the elements of malice murder. After considering the evidence thus presented, the district court will determine anew the validity of petitioner's guilty plea.

VACATED and REMANDED, with instructions.

---

11. The elements of the crime of murder in Georgia are: "(1) unlawfully (2) causing the death of another human being (3) with malice aforethought." *Holloway v. McElroy,* 474 F.Supp. 1363, 1368 (M.D.Ga.1979), *aff'd,* 632 F.2d 605 (5th Cir.1980), *cert. denied,* 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981). "Malice aforethought" has been defined as follows:

> [M]alice is "the unlawful, deliberate intention to kill a human being without excuse, justification or mitigation." It is a "state of mind and is a premeditated, deliberate intention and desire and design[] to unlawfully kill another human being." Thus, "intent to kill" is an integral part of an essential element of the crime of murder, namely malice aforethought.

*Mason v. Balkcom,* 487 F.Supp. 554, 558 (M.D. Ga.1980), *rev'd on other grounds,* 669 F.2d 222

(5th Cir. Unit B 1982), *cert. denied,* 460 U.S. 1016, 103 S.Ct. 1260, 75 L.Ed.2d 487 (1983). Thus, "[m]alice incorporates the intent to kill." *Patterson v. State,* 239 Ga. 409, 238 S.E.2d 2, 8 (1977). Examining the element of malice aforethought, the former Fifth Circuit noted that voluntary manslaughter in Georgia is a homicide that would be murder but for the lack of malice aforethought; the element of malice aforethought separates the two crimes. *Holloway v. McElroy,* 632 F.2d at 617–18, 628–29. For cases in which the element of malice aforethought is discussed, see, e.g., *Walden v. State,* 251 Ga. 505, 307 S.E.2d 474 (1983); *Lackey v. State,* 246 Ga. 331, 271 S.E.2d 478 (1980); *Patterson v. State,* 239 Ga. 409, 238 S.E.2d 2 (1977); *Davis v. State,* 237 Ga. 279, 227 S.E.2d 249 (1976) (per curiam); *Davis v. State,* 233 Ga. 638, 212 S.E.2d 814 (1975).