103 F.3d 133
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Steve PIGG, Petitioner-Appellant,
v.
Craig HANKS, Respondent-Appellee.
 No. 96-2105.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 25, 1996.
Decided Dec. 03, 1996.[1]
 
 Before POSNER, Chief Judge, and MANION and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Petitioner Steve Pigg, an Indiana state prisoner, pleaded guilty pursuant to a plea agreement to the shooting murders of 17-year-old Jason Brown and 23-year-old Nanette Scott, and was convicted of those crimes. In exchange for the guilty plea, the State agreed to dismiss the death penalty information[2], and agreed not to recommend more than 80 years' imprisonment. Pigg was 16 years old at the time the murders occurred, and 17 years old when he was sentenced to a 45-year prison term for Brown's murder, and a consecutive 35-year prison term for Scott's murder. No direct appeal was filed from the conviction or sentence. Subsequently Pigg filed a post-conviction petition in Indiana, raising the issue of the voluntariness of his guilty plea. That petition was denied on the merits. The denial was affirmed in Pigg v. State, No. 52 A 02-9408-CR-460, 649 N.E.2d 146 (Ind.Ct.App. April 5, 1995) (unpublished order). The Indiana Supreme Court denied transfer on May 18, 1995. On January 16, 1996, the federal habeas corpus petition was filed pursuant to 28 U.S.C. § 2254, and it was subsequently denied by the district court.
 
 
 2
 In his petition for writ of habeas corpus, petitioner contends that his plea of guilty as to Count II, the murder of Nanette Scott, was not knowing and voluntary because he did not fully understand the nature of the accessory or accomplice aspect of his crime, since he was charged as a principal, and since he only admitted at the change of plea hearing to having heard the other men plan Scott's murder and to helping them get rid of her body after they had already shot her outside of petitioner's presence.
 
 
 3
 While this circuit has held that the new amendments to § 2254(d) made by § 104 of the Antiterrorism and Effective Death Penalty Act, Pub.L. 104-132, 110 Stat. 1214, apply to pending habeas corpus cases, Lindh v. Murphy, 96 F.3d 856 (7th Cir.1996) (en banc ), and in this appeal the state has cited the new standard,[3] under either the new or old version of the habeas corpus statute, the petition fails.
 
 
 4
 A plea of guilty must be knowing and voluntary. Parke v. Riley, 506 U.S. 20, 28-29 (1992); Boykin v. Alabama, 395 U.S. 238, 242 (1969). Defendant must receive "real notice of the true nature of the charge against him," Henderson v. Morgan, 426 U.S. 637, 645 (1975), quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941), and possess an understanding of the "law in relation to the facts," McCarthy v. United States, 394 U.S. 459, 466 (1969). Thus, failure to establish a factual basis may affect the voluntariness of a guilty plea. McCarthy, 394 U.S. at 466; Carreon v. United States, 578 F.2d 176, 179 (7th Cir.1978).
 
 
 5
 The charging instrument lists only the offense of murder. Count 2 of the Information states that "Steve Pigg did knowingly kill Nanette Scott by shooting, contrary to the form of the statutes in such cases made and provided by I.C. 35-42-1-1(1) and against the peace and dignity of the State of Indiana." (R. 52) The Motion to Withdraw Former Plea of Not Guilty and Enter Plea of Guilty states that "the charge to which I am pleading guilty is: I.C. 35-50-2-3. Murder."[4] (R. 54) The charge of accomplice need not be formally made. Cf. Henderson v. Morgan, 426 U.S. 637, 645-46 (1975) ("The charge of second-degree murder was never formally made"; however, the record might otherwise show that defendant received notice of the nature of the charge of second-degree murder, which includes the element of intent). Under Indiana law,[5] aiding, inducing, or causing an offense is not a separate offense but is the basis for the underlying charge. Thacker v. State, 556 N.E.2d 1315, 1322 (Ind.1990). Thus, a charge may be brought as though the accused were the principal, even though he acted as an accomplice. Id.
 
 
 6
 At the change of plea hearing the state court expressly asked whether petitioner understood that aiding and abetting constituted murder, after it was noted that the Information charged him as a principal:
 
 
 7
 STATE COURT: Do you understand that as to Count 2 you would be admitting to the Court that within Miami County, State of Indiana, on or about October 28, 1990 you did knowingly kill Nanette Scott by shooting her contrary to Indiana law?
 
 
 8
 [DEFENSE COUNSEL]: Your Honor, as to Count 2, we are guilty of the defense [sic] of murder; but it is by aiding and adducing, aiding and adducing another to commit that crime, Your Honor.
 
 
 9
 STATE COURT: What I read was the Information, the way it was charged. Is that later amended?
 
 
 10
 [PROSECUTOR]: No, it was not, Your Honor. But by law one who aides [sic] and adduces may be charged as a principal. And I agree that the theory of prosecution would be aiding and adducing for Mr. Pigg.
 
 
 11
 [DEFENSE COUNSEL]: We would also agree, Your Honor.
 
 
 12
 STATE COURT: Mr. Pigg, so that there's no confusion about this, if you aided, abetted, or caused the death of Nanette Scott, you may be charged with the murder of Nanette Scott. Do you understand that?
 
 
 13
 PIGG: Yes.
 
 
 14
 (Change of Plea Hearing, 11/21/91, Tr. 7-8.)
 
 
 15
 It is true that the Indiana state court, at the post-conviction proceedings, made several factual errors in its findings,[6] and the Indiana Court of Appeals similarly erred when it stated that "Pigg went into the residence and told Scott that Brown was outside and Scott went outside." Nevertheless, there was still more than sufficient statements made by petitioner, in his sworn testimony given at the change of plea hearing, to demonstrate his participation in Scott's murder; petitioner himself testified to facts clearly constituting aiding and abetting.[7]
 
 
 16
 At the change of plea hearing, Pigg described in detail events related to Nanette Scott's murder on October 28, 1990, which took place about 1 1/4 hours after Pigg had shot Jason Brown (Scott's boyfriend) and disposed of Brown's body by throwing it off a bridge into a river. During a weekend-long party at Pigg's home, there was some discussion among Pigg, four or five other teenagers, and a 30-year-old man who attended the party, Roy Williams, about killing Jason Brown and Nanette Scott.
 
 
 17
 [PROSECUTOR]: At the kitchen table you're telling us that you talked about killing both Jason and Nanette?
 
 
 18
 PIGG: Yes, sir.
 
 
 19
 (Change of Plea Hearing, 11/21/91, Tr. 42) The plans has been discussed for about 24 hours prior to the killings. Despite the fact that the original plan was to wait until the next night, Sunday, when the party was over before shooting Brown and Scott (Tr. 51), late on Saturday night, out in the woods, Pigg shot Jason Brown twice, killing him. (Tr. 22-23) Pigg and two others then disposed of Brown's body. (Tr. 23-24) Driving back to Pigg's home from the bridge, there was discussion among Pigg and the other two young men about Nanette Scott. Petitioner testified: "Curtis Burke was going to go out back, and Carl Purvis was going to go in and get her. Carl Purvis was going to bring her outside, and Curtis Burke was going to shoot her." (Tr. 25)
 
 
 20
 When they returned to Pigg's home, Pigg went into his bedroom with his girlfriend. It was Purvis who "got Nanette Scott to come out, go outside" and Pigg never saw her alive again. (Tr. 26) Purvis then came and asked Pigg to join them outside, and they went to dispose of Nanette Scott's body in the river. (Tr. 26-27) Upon returning home again, Pigg and the others cleaned up Scott's blood where she had fallen, then split money, a gun, and ammunition which had all belonged to Brown, and finally burned all of Scott's and Brown's belongings. (Tr. 33, 34-36) At the change of plea hearing, the judge probed in regard to motive for the killings:
 
 
 21
 STATE COURT: Because they disliked [Jason Brown] you took an active role then in planning his murder?
 
 
 22
 PIGG: I didn't plan it.
 
 
 23
 STATE COURT: You were part of the conversation. You did the shooting. You admitted that. * * *
 
 
 24
 PIGG: At the time I wasn't part of the planning. I was objecting to it.
 
 
 25
 STATE COURT: You what?
 
 
 26
 PIGG: I wouldn't--I wouldn't--I didn't want to take no part of it at the time it was talked about.
 
 
 27
 STATE COURT: But you did. You ultimately shot Jason Brown and participated in planning the murder of Nanette Scott. Why would you do that simply because somebody was at a party being obnoxious?
 
 
 28
 PIGG: At the time in the woods--when we got back in the woods when I shot Jason, it wasn't planned. It just happened.
 
 
 29
 STATE COURT: Do you understand that that contradicts everything the other two people who have plead have told us?
 
 
 30
 PIGG: Yes, sir, I do.
 
 
 31
 (Change of Plea Hearing, 11/21/91, Tr. 48-49) The testimony continued regarding Pigg's involvement in Scott's murder:
 
 
 32
 DEFENSE COUNSEL: But then once Jason had been killed, from that point forward Nanette had to be eliminated or in some manner silenced, did she not?
 
 
 33
 PIGG: Yes, sir.
 
 
 34
 DEFENSE COUNSEL: And that's what led up to killing Nanette Scott?
 
 
 35
 PIGG: Yes, sir.
 
 
 36
 DEFENSE COUNSEL: And when they were first talking around that kitchen table, the people whom you've described, was anything said by anybody about when Jason--if Jason were killed what would happen to Nanette?
 
 
 37
 PIGG: She would be killed too.
 
 
 38
 (Change of Plea Hearing, 11/21/91, Tr. 55) In concluding the change of plea hearing, the state court found "that the factual basis has been established for the plea of guilty to the murder of Nanette Scott" and Jason Brown. (Tr. 65)
 
 
 39
 Petitioner here admitted that he participated in the conversations which took place prior to and after the murder of Scott, admitted that he shot Brown as part of the plan to murder both Scott and Brown, and admitted that he participated in dumping the bodies of both victims. Given this testimony of Pigg regarding his considerable and sustained involvement in the plot to kill the two victims, we conclude that Pigg's plea of guilty to the murder to Nanette Scott was entered voluntarily and with a full understanding of the nature of the charge and its basis on the theory of aiding and abetting as to Scott's murder. He is not entitled to habeas corpus relief.
 
 
 40
 Petitioner relies on Henderson v. Morgan, 426 U.S. 637 (1976), where the Court found that a plea of guilty was not voluntary because nothing in the record showed he had the requisite intent, but emphasized that defendant had an "unusually low mental capacity" (with an IQ between 68 and 72), and that the case was "unique because the trial judge found as a fact that the element of intent was not explained" to the accused. Henderson, 426 U.S. at 647. In addition, the accused in Henderson "made no factual statement or admission necessarily implying that he had such intent." 426 U.S. at 646. Also, defense counsel in Henderson argued at sentencing that defendant never intended to harm the victim, and in fact expressly argued that the accused "meant no harm to that lady" prior to his stabbing her to death. 426 U.S. at 643. In contrast, petitioner here never expressly negated his knowledge of the plot or intent to kill Nanette Scott.
 
 
 41
 Petitioner also relies on Nash v. Israel, 707 F.2d 298 (7th Cir.1983), where this court affirmed a district court order vacating a guilty plea and granting habeas corpus relief where the trial court had failed to sufficiently "establish on the record that Nash understood the elements of the charge of party to the crime of first degree murder and that his conduct was sufficient to constitute the offense with which he was charged," especially because "the charge of party to the crime of first degree murder is exceedingly complex." 707 F.2d at 301-03. In Nash, unlike the present case, the defendant expressly stated that he was confused and did not understand the nature of the charge.[8] The court also relied on the fact that the transcript of the guilty plea proceeding "contains no admission by Nash that he intended Winters' death, that he knowingly aided and abetted an intentional murder, or that he entered into a conspiracy to commit the crime of first degree murder." Nash, 707 F.2d at 302-03. In contrast, petitioner here testified at length to his extensive involvement in Scott's death.
 
 
 42
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Defendant waived oral argument, and therefore the appeal is submitted on the briefs and record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [2]
 Given the State's agreement to dismiss the death penalty information, we question the ultimate wisdom of petitioner's seeking to vacate that plea agreement. While petitioner only wants to revoke his plea as to one of the two murder counts, each portion of a plea agreement is not generally considered severable from the rest of the agreement. Nevertheless, since we reject his voluntariness claim, we need not delve further into this question
 
 
 [3]
 Under the new standard, habeas corpus relief may not be granted unless this court finds that the state court adjudication either: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254
 
 
 [4]
 This statute actually provides for the penalty for murder. Ind.Code § 35-50-2-3
 
 
 [5]
 Indiana Code § 35-41-2-4 provides that a "person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense...."
 
 
 [6]
 For example, the state post-conviction judge found that "petitioner drove Curtis Burke and Carl Purvis to the place where Nanette Scott was and discussed and planned to lure her out of a house for the purpose of killing Nanette Scott," and that "petitioner entered the house where Nanette Scott was located and he told Nanette Scott, upon asking where Jason Brown was, that he (Jason Brown) was outside." (R. 44) In fact, petitioner testified at the 1991 change of plea hearing that it was Purvis who lured Scott out of the house. (Change of Plea Hearing, 11/21/91, Tr. 25.)
 
 
 [7]
 The state court permitted defense counsel to "lead [Pigg] through" the story of his involvement in the murders in order to establish a factual basis for the plea. (Change of Plea Hearing, 11/21/91, pp. 19-20) The prosecutor and the judge then asked Pigg extensive questions, also
 
 
 [8]
 The defendant in Nash was asked, "Do you fully understand what the charge is that you have pled guilty to?" and he responded, "No" and added, "It's been explained to me, but I can't understand it." Nash, 707 F.2d at 301