Garland Ray GREGORY, Jr., Appellant,

v.

Herman SOLEM, Warden, South Dakota State Penitentiary; Mark V. Meierhenry, Attorney General, State of South Dakota, Appellees.

No. 84–2509.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1985.

Decided Oct. 2, 1985.

Rehearing and Rehearing En Banc Denied Dec. 5, 1985.

Robert M. Nash, Rapid City, S.D., for appellant.

Jeffrey P. Hallem, Asst. Atty. Gen., Pierre, S.D., for appellees.

Before LAY, Chief Judge, PHILLIPS,[*] Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

LAY, Chief Judge.

Petitioner Garland Ray Gregory, Jr. appeals from the denial by the district court[1] of his petition for a writ of habeas corpus brought under 28 U.S.C. § 2254 (1982). He challenges his conviction for conspiracy to commit murder on the grounds that the factual basis for his guilty plea was inadequate, that his plea of guilty was involuntary and violated due process, and that he was not informed of the possible consequences of his plea. For the reasons set forth below, we affirm.

**Background**

Petitioner Gregory and his co-defendant John Archambault were charged on November 3, 1979 with murder by premeditated design, S.D. Codified Laws Ann. § 22-16-4 (1979), and conspiracy to commit murder, S.D. Codified Laws Ann. § 22-3-8 (1979), in connection with the November 1, 1979 shotgun slaying of Michael Young. Both Gregory and Archambault initially appeared without counsel before a law-trained magistrate who read the complaint to the defendants, advised them of the possible penalties and their constitutional and statutory rights, and set bail. On November 6, 1979, Gregory, accompanied by appointed counsel, again appeared before the magistrate and was again advised of the charges, possible penalties, and his rights.

Both defendants appeared with counsel for a joint preliminary hearing on November 13 and 14, 1979, at which numerous witnesses testified. On December 12, 1979, both defendants were charged in an information and appeared for arraignment. Counsel waived the reading of the information for both defendants. At that arraignment, Gregory signed a form acknowledging that he was aware of his constitutional rights to the presumption of innocence, to a unanimous jury verdict, to appointed counsel, to confront witnesses, to plead not guilty, and the right not to be compelled to be a witness against himself. The form stated that he understood that he was charged with "conspiracy to commit murder," with a maximum penalty of life imprisonment, and with "murder," carrying a maximum penalty of death or life imprisonment. Nowhere on this form were the elements of conspiracy enumerated or defined. Petitioner testified that he signed the form voluntarily, and both petitioner and his counsel stated that Gregory understood everything in the form. The state judge found that both defendants "do completely and fully understand the nature of the causes against them and also that they do fully and completely understand the possible penalties that could be imposed in the event of a conviction." Both defendants pled not guilty to both counts.

On January 9, 1980, Archambault changed his plea to guilty to the conspiracy charge and agreed to be a witness against Gregory and another alleged participant in the murder, Ron Brumbaugh. At his change of plea hearing, Archambault's attorney gave a detailed description of Archambault's and Gregory's participation in the murder which Archambault indicated was an accurate statement of the facts.

Thereafter, Gregory entered into a plea bargain with the state. On March 13, 1980, Gregory pled guilty to conspiracy to commit murder in exchange for the state's agreement to recommend a life sentence

* The HONORABLE HARRY PHILLIPS, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation. Judge Phillips participated in oral argument and at conference agreed with the vote of the court. However, due to his untimely death he did not have an opportunity to review the opinion.

1. The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota.

and move to dismiss the murder charge. He also agreed to tell the state's attorney the facts regarding the crime and to testify in any future action against Brumbaugh. In a colloquy with the state trial court judge at the change of plea hearing, Gregory answered affirmatively when asked whether he understood that by pleading guilty he waived his constitutional rights to trial by jury, to confront and cross-examine witnesses, and his right not to be compelled to be a witness against himself. He affirmed that he pled guilty voluntarily and had not been threatened, coerced, or influenced by promises. The court found that Gregory's plea was voluntarily made.

The judge also stressed at that hearing that he could not accept Gregory's plea until a factual basis for the plea was established, but indicated that he was totally conversant with all of the facts. When asked if Gregory had had an opportunity to review the relevant files, Gregory's counsel stated that the defendant had read all of the relevant transcripts and statements of witnesses.[2] The colloquy continued:

BY THE COURT: Okay. Is Mr. Gregory prepared at this time to state in his own words to the Court the factual basis for his plea to the offense of conspiracy to commit murder?

BY MR. WOLSKY [Attorney for Gregory]: If the Court feels that it is necessary for him to do so, other than what the Court has already had an opportunity to read, he is. But—

BY THE COURT: Well, I really honestly believe that there is a sufficient factual basis in the file to establish that Mr. Gregory did commit the offense to which he plead [sic] guilty. But let me ask you this, Mr. Gregory:

Your plea of guilty as I have advised you before is an admission that you did commit the offense to which you plead guilty. Do you understand that?

BY THE DEFENDANT: Yes, I do.

BY THE COURT: And did you, as alleged in the Information and as contained in all of the records and files, conspire with John Archambault and— well, principally John Archambault, I am not going to go into the matter of Brumbaugh at this time, but did you conspire with John Archambault to commit the murder upon Mr. Young?

BY THE DEFENDANT: Yes, I did.

BY THE COURT: Is there anything relating to the conspiracy charge that's been presented to the Court in the form of Preliminary Hearing testimony, testimony or statements of Counsel, or anything relating to the conspiracy charge that you dispute?

(Off the record discussion between Counsel.)

BY THE DEFENDANT: I dispute the fact that I did not shoot Michael Young [sic], and I did not make an open agreement to shoot Michael Young to John Archambault. But I did carry on a conversation with him about that. But I didn't agree to it. But I was involved in the conversation where it was mentioned.

BY THE COURT: Anything else you want to state to the Court as it pertains to that charge?

BY THE DEFENDANT: No, nothing else.

BY THE COURT: Okay, very well.

Okay, for the record, the Court finds that there is a factual basis for the plea, and I previously having determined that the plea was voluntarily made, it is accepted and Mr. Gregory is adjudged guilty of the offense of conspiracy to commit murder.

Upon the state's motion, the charge of murder was dismissed. Archambault received a sentence of 50 years; Gregory was sentenced to life imprisonment.

Gregory filed a pro se petition for habeas corpus in state court in January 1981. Counsel was appointed and a hearing held on the petition. The habeas court denied

---

**2.** Gregory argues on appeal that this statement by his attorney was incorrect. He states that he did read the preliminary hearing transcript and witnesses' statements, but was not given access to a psychiatric report concerning his co-defendant, Archambault.

post-conviction relief, holding that the sentencing court had a sufficient factual basis to accept the plea. On appeal to the South Dakota Supreme Court, the habeas court's finding of a sufficient factual basis was upheld as not clearly erroneous. *See Gregory v. State*, 325 N.W.2d 297, 298 (S.D. 1982). However, the South Dakota Supreme Court remanded the case for specific findings as to whether petitioner's plea was voluntary and intelligent and whether he had been advised of the nature of the charges and the consequences of his plea.

The state habeas court, without further hearings, again denied the petition. It found that petitioner entered his plea voluntarily and intelligently with knowledge of the charges against him and the consequences of his plea. On appeal after remand, *Gregory v. State*, 353 N.W.2d 777 (S.D.1984), the Supreme Court expressed dissatisfaction with the record established at the proceedings below,[3] but held that the habeas court's conclusion that Gregory understood the nature of the charges against him viewed in the totality of the circumstances was fairly supported by the record, found that petitioner was aware that he would get a life sentence for conspiracy under the plea agreement, and affirmed the petition's denial. *Id.* at 780–81.

Petitioner then brought a federal habeas corpus petition under 28 U.S.C. § 2254. The federal district court, relying on the presumption that state court factual findings are correct, *see* 28 U.S.C. § 2254(d), upheld the findings of the state courts and denied the petition. This appeal followed.

**Discussion**

## I.

█ We turn first to petitioner's argument that there was no factual basis for

his guilty plea to the conspiracy charge. At Gregory's change of plea hearing, the sentencing court did not set out in detail the factual basis for the charge of conspiracy. Instead, the judge indicated he was relying on witness testimony and evidence produced at the preliminary hearing and referred to his own familiarity with the facts due to his personal involvement in the case since its inception. He also stated that he had read the entire Archambault file, which included polygraph statements by Archambault and the evidence which established the factual basis for Archambault's guilty plea. He noted that Gregory had been present as a co-defendant for the proceedings at which this evidence was produced. Although petitioner argues that it was improper to refer to evidence not explicitly made part of the record to support the finding of a factual basis, we hold it was not impermissible for the trial court to do so. *See Paulson v. Black*, 728 F.2d 1164, 1167 (8th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 325, 83 L.Ed.2d 262 (1984) (factual basis supported by trial court's access to preliminary hearing transcript); *Thunderbird v. Solem*, 565 F.2d 1018, 1023 (8th Cir.1977), *cert. denied*, 435 U.S. 954, 98 S.Ct. 1585, 55 L.Ed.2d 805 (1978) (preliminary hearing transcript may support factual basis even if contents not admissible at trial).

█ The purpose of the factual basis requirement is to assure the plea's accuracy through the presence of sufficient evidence at the time of the plea upon which a court may reasonably determine that the defendant likely committed the offense. In *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the state

---

**3.** The South Dakota Supreme Court had requested the trial court to enter specific findings on whether Gregory was advised of the nature of the charge and the consequences of his plea and for a determination of whether Gregory's guilty plea was a voluntary and intelligent choice among alternative courses of action. *Gregory v. State*, 325 N.W.2d at 300. Upon remand, however, the trial court entered findings and conclusions based only upon the record as developed at the post-conviction hearing which was the

source of the order from which Gregory originally appealed. No additional testimony was taken nor was any additional argument received. *See Gregory v. State*, 353 N.W.2d at 777. We join the South Dakota Supreme Court in urging trial courts to make a full and complete record when accepting a guilty plea, especially when the charges are as serious as those involved here. *See id.* at 781. If additional evidence had been taken below, the issue we face here could have been avoided.

court relied on witness testimony to provide a factual basis for accepting the defendant's guilty plea to second degree murder. Witnesses for the state testified at the plea hearing that the defendant left his house with a gun, stated his intent to kill the victim, and returned later declaring that he had completed the killing. The defendant told the court that he had not committed the crime, but would plead guilty to second-degree murder despite his innocence to avoid a possible death sentence if convicted by a jury of first-degree murder. In light of the strong factual basis for the plea demonstrated by the state and the defendant's unequivocal desire to plead guilty despite his asserted innocence, the Supreme Court held that an express admission of guilt by the defendant was not required for acceptance of the guilty plea. *Id.* at 37–38, 91 S.Ct. at 167–168. *Alford* clearly governs these state court proceedings. Although the state trial judge failed to set out the factual basis on the record, the trial judge as well as the

Supreme Court of South Dakota found a sufficient factual basis established by the preliminary hearing transcript and other documents before the trial court to accept Gregory's plea of guilty.

█ We have carefully examined the record and find that sufficient evidence of Gregory's participation in a murder conspiracy exists to support the sentencing court's conclusion that there was a factual basis for Gregory's guilty plea. The evidence presented at the preliminary hearing supports a finding that Gregory's actions leading up to and on November 1, 1979, were within the scope of the offense, conspiracy, to which he pled guilty.[4] In light of the record before the state court, Gregory's argument that the evidence was insufficient to create a factual basis for his guilty plea must be rejected.

## II.

Petitioner additionally asserts that his guilty plea was involuntary because he did

---

**4.** Briefly summarized, the evidence produced at the preliminary hearing and contained in the settled record indicates that on the morning of November 1, 1979, Gregory's roommate saw him with a shotgun. Gregory said the gun belonged to "Ron" and that he had it in his possession "to help a friend." Gregory loaded the gun with five shells and put it back in his closet. The roommate's girlfriend testified that when Gregory left the room at about 6:00 p.m. he took the gun with him.

Ron Brumbaugh testified that he loaned his car to Gregory some time after 6:00 p.m. on the evening of November 1, 1979 and that Gregory returned the keys twenty to forty minutes later. The coroner estimated the time of Young's death to be 6:45 p.m. Brumbaugh testified that later that night Gregory said in Archambault's presence "if I did you a favor I'm glad." Brumbaugh testified that he kept the shotgun in the trunk of his car and the shells in his room, and that after the murder the gun was in a locker in his room.

A witness testified that she was with Gregory, Archambault, and Brumbaugh during the evening of November 1, 1979. That evening Gregory told her twice that "Mike is gone," said "You might read about it in the paper," and stated that Archambault had pulled the trigger. She also testified that Gregory previously "had mentioned a few times that he would have killed Mike but somebody had stopped him," and that Gregory told her "'there's no way John [Ar-

chambault] would use the gun' because he just, he didn't have the will to kill somebody." She stated that Gregory was angry with Young for raping a girlfriend of Gregory's, for stealing some marijuana from Archambault, and for mistreating another friend who later attempted suicide, and that on at least two of these occasions Gregory planned to kill Young but was talked out of it. She also said that Archambault became angry with Young for kissing a friend of his but that Gregory tried to calm him down and discouraged Archambault from his plan to get a gun.

Another witness testified that on the morning of November 2, 1979, the day after Michael Young was killed, Gregory stated that Archambault had shot Young and that he, Gregory, had driven the car and was in just as much trouble. That same day, John Archambault gave a statement to Special Agent Loren Pankratz of the South Dakota Division of Criminal Investigation. Archambault stated that at 6:00 p.m. on November 1 he told Young to join him in Ron Brumbaugh's car, which Gregory was driving. Archambault said that after Gregory stopped the car on a country road, Archambault and Young got out and Gregory shot Young with a shotgun five times. Archambault said that they drove back to return Brumbaugh's car and that Gregory told him that if anyone said anything about the killing "I'll take them out too," and that "I don't know if I was doing you a favor or not but I was doing it for myself."

not understand the nature of the conspiracy charge to which he pled guilty. He argues that his denial at the change of plea hearing that he killed Michael Young or made "any open agreement" with Archambault to do so amounted to denial of a critical element of the offense of conspiracy. In support of this claim, Gregory testified at the post-conviction hearing that on the night before Young was killed, Archambault was "acting radical" and stated that Young had wronged him. Gregory testified he was present when Archambault stated he wanted to kill Young and that he told Archambault to "go and sleep it off." He claims that the elements of conspiracy which the state would have to prove at trial to obtain a guilty verdict were never explained to him by the court and maintains that he would not have pleaded guilty had he understood that a conspiracy conviction requires an agreement.

■ Due process requires that a guilty plea be made knowingly, intelligently, and voluntarily. Evidence of guilt establishes a factual basis for the plea, not that the defendant understands "the law in relation to the facts." *Nash v. Israel,* 707 F.2d 298, 303 n. 8 (7th Cir.1983). In *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the Supreme Court reversed a state court conviction because the record did not show that the plea was intelligent and voluntary. The Court stressed that a guilty plea is a waiver of several constitutional rights and held that a court must exercise the utmost solicitude "in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin,* 395 U.S. at 244, 89 S.Ct. at 1712. *See also McCarthy v. U.S.,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) (Rule 11); *Griffith v. Wyrick,* 527 F.2d 109, 112 (8th Cir.1975).

■ The standard for a valid guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *North Carolina v. Alford,* 400 U.S. at 31, 91 S.Ct. at 164 (citing *Boykin v.*

*Alabama* ). In *Henderson v. Morgan,* 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), the Supreme Court also emphasized the need for a court to ascertain that the defendant has a complete enough understanding of the charges to be able to make an informed choice among the available alternatives. In *Henderson,* the defendant was charged with first degree murder but pled guilty in state court to second degree murder even though he was never formally charged with the lesser offense. *Id.* at 645, 96 S.Ct. at 2257–58. At sentencing after acceptance of his plea, the defendant stated that he never intended to harm the victim. The defendant testified at the habeas corpus hearing that he would not have pled guilty had he known that intent was an element of the offense. *Id.* at 643–44, 96 S.Ct. at 2256–57. On remand, the district court found he had not learned of the offense's intent element from his attorneys or any court. The Court examined the totality of the circumstances to determine whether the substance of the charge was conveyed to the defendant and held that, even assuming that the "prosecutor had overwhelming evidence of guilt available" and the defendant's attorneys were competent, a guilty plea cannot be voluntary in a constitutional sense unless the defendant received "real notice of the true nature of the charge against him." *Id.* at 644–45, 96 S.Ct. at 2257–58 (quoting *Smith v. O'Grady,* 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941)). The Court noted that normally the record will show that the trial judge or defense counsel explained the nature of the offense and that "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Id.* 426 U.S. at 647, 96 S.Ct. at 2258.

In *Marshall v. Lonberger,* 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983), the court of appeals had rejected state court findings in a habeas corpus proceeding that the defendant previously had pled guilty to attempted murder and was subject to an

enhanced sentence as "not fairly supported by the records that were before them" under 28 U.S.C. § 2254(d)(8). The Supreme Court stressed that the findings by state courts in habeas corpus proceedings are entitled to a "presumption of correctness" under section 2254(d) and that a federal habeas court must do more than simply disagree with the state court before rejecting its factual determinations. *Marshall,* 459 U.S. at 432, 103 S.Ct. at 849. Instead, it must conclude that the state court findings lacked even "fair support" in the record. *Id.* The Supreme Court held that the court of appeals had not afforded the findings the " 'high measure of deference,' *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), to which they are entitled." *Id. See Powell v. Wyrick,* 744 F.2d 632, 635 (8th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1212, 84 L.Ed.2d 354 (1985); *see also Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (solemn declarations in open court by a defendant in the original plea hearing and judge's findings in accepting the plea carry a strong presumption of verity and are a formidable barrier in subsequent collateral proceedings).

*Henderson* is easily distinguished from the facts now before us. As Justice Stevens pointed out, the facts in *Henderson* were "unique" because the state trial judge "found as a fact that the element of intent was not explained to the respondent." [5] *Henderson v. Morgan,* 426 U.S. at 647, 96 S.Ct. at 2258–59. He was never formally charged with the offense to which he ultimately pled guilty. Here, petitioner was charged from the beginning with conspiracy and the state court made a specific finding of fact that the nature of the offense was fully understood by Gregory.

The *Henderson* presumption that counsel explained the nature of the charge to the defendant lends strong support to that finding. While that finding is not immune to collateral attack, it deserves the "high measure of deference" prescribed in *Sumner v. Mata.*

■ After careful review of the entire record, we cannot say that the state court findings lack even fair support in the record as is required by *Marshall v. Lonberger.* Petitioner claims he did not understand that to be guilty of conspiracy he would have to agree to have the victim killed. Yet, during both the colloquy before the state trial judge and at the postconviction hearing Gregory indicated that although he did not want to plead guilty to agreeing to kill Young he did converse with Archambault concerning the murder. For a conviction of conspiracy under South Dakota law, the agreement between co-conspirators need not be formal or express and may consist simply of a tacit understanding. *See, e.g. State v. Carlson,* 79 S.D. 411, 112 N.W.2d 891, 892 (1962). It would undoubtedly have been better had the state court questioned Gregory in greater detail to set out explicitly for the record the extent of defendant's knowledge of the elements of the conspiracy offense to which he was pleading guilty. *See Boykin v. Alabama,* 395 U.S. at 243–44, 89 S.Ct. at 1712–13; *Paulson v. Black,* 728 F.2d at 1167. However, it is clear that the conduct to which he did admit would under South Dakota law fulfill the agreement element of the conspiracy offense. Though the elements of conspiracy were apparently never recited to him in open court, it is a reasonable and fair inference from the record that Gregory did understand that

---

**5.** The *Henderson* Court also noted:

Moreover, respondent's unusually low mental capacity provides a reasonable explanation for counsel's oversight; it also forecloses the conclusion that the error was harmless beyond a reasonable doubt, for it lends at least a modicum of credibility to defense counsel's appraisal of the homicide as a manslaughter rather than a murder.

*Henderson v. Morgan,* 426 U.S. 637, 647, 96 S.Ct. 2253, 2259, 49 L.Ed.2d 108 (1976).

Here, defendant was a nineteen year old college student and was found by the state court to be a person of at least average intelligence. *See Marshall v. Lonberger,* 459 U.S. 422, 428–29, 437, 103 S.Ct. 843, 847–48, 852, 74 L.Ed.2d 646 (1983).

some sort of an agreement was a necessary element of conspiracy.

We are influenced as well by the fact that the record shows that Gregory acted on the advice of his counsel in entering into the plea bargain and pleading guilty to a lesser offense. The record reveals that petitioner knowingly entered into a bargain to plead guilty to conspiracy with a recommended life sentence to avoid the "99–1 chance" his counsel predicted that he could be convicted by a jury of murder. Petitioner has offered no evidence to rebut this presumption that his counsel explained to him the nature of the conspiracy offense.[6] He stated at the post-conviction hearing that he was satisfied with his representation and was not alleging ineffective assistance of counsel. The fact that the plea bargain was made through and with effective assistance of counsel is strong evidence of the voluntary nature of the plea.[7] Petitioner's claim that his plea was involuntary and that he lacked notice of the nature of the charge must also be rejected.

### III.

We also find Gregory's argument that he had insufficient knowledge of the possible punishment to which his plea subjected him to be without merit. He testified that he was not aware of the punishment for conspiracy when he entered his plea and that he was unaware at that time that a life sentence made him ineligible for parole.

■ The record indicates that Gregory did have knowledge that the life sentence actually imposed could and likely would be the result of his guilty plea. Gregory was informed at his initial appearances that the conspiracy charge carried a maximum of life imprisonment. His plea bargain provided that the state would recommend life imprisonment. Gregory indicated in response to a direct question during the plea colloquy and again at the post-conviction hearing that he had understood that the result of his plea would be a recommended life sentence. Though there is no indication in the record that Gregory ever was informed that a life sentence meant that he would be ineligible for parole, that failure alone does not require that his plea be vacated. In *McRae v. United States*, 540 F.2d 943 (8th Cir.1976), *cert. denied*, 429 U.S. 1045, 97 S.Ct. 750, 50 L.Ed.2d 759 (1977), this court rejected a postconviction challenge to a guilty plea by a petitioner who was not informed of the mandatory special parole term for federal drug convictions. The court found that as the petitioner understood the basic terms of his plea

---

**6.** At the post-conviction hearing Gregory testified that he did discuss entry of his guilty plea with his attorneys. However, at that hearing petitioner's counsel objected to all questions by the state which related to the nature of the discussions between Gregory and his attorneys regarding the guilty plea. The petitioner offers no other evidence as to whether his counsel discussed with him the elements of conspiracy.

**7.** We note that acknowledgement of the plea bargain does not in itself replace the necessity to show a knowing and voluntary plea to the offense charged. In *Watkins v. Solem*, 571 F.2d 435, 436 (8th Cir.1978), we quoted from *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978):

> To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is "patently unconstitutional." But in the "give-and-take" of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.

> Plea bargaining flows from "the mutuality of advantage" to defendants and prosecutors, each with his own reasons for wanting to avoid trial. Defendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choice in response to prosecutorial persuasion, and unlikely to be driven to false self-condemnation. Indeed, acceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process. By hypothesis, the plea may have been induced by promises of a recommendation of a lenient sentence or a reduction of charges, and thus by fear of the possibility of a greater penalty upon conviction after a trial.

*Bordenkircher v. Hayes*, 434 U.S. at 363, 98 S.Ct. at 667–68 (citations omitted).

agreement and had told his attorney he was not concerned about parole, there was no fundamental defect that required the plea to be vacated. *Id.* at 946–47. *See also Rouse v. Foster,* 672 F.2d 649, 651 (8th Cir.1982) (where petitioner was aware of sentence he would receive it was not constitutional error not to describe all sentencing possibilities.); *U.S. v. Timmreck,* 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979) (no habeas relief where judge omitted all mention of special parole term during Rule 11 colloquy absent allegation of actual prejudice.)

■ Petitioner's remaining challenges are also without merit. He states that he was not informed of the unanimous jury verdict requirement. However, the record shows that he was informed of this requirement at both of his initial appearances and on the form he signed at the December 12th arraignment, the contents of which he represented to the court that he understood. He also challenges his attorney's statement when he entered his plea that he had read all relevant statements of witnesses. Gregory apparently was not given access to a psychiatric report concerning Archambault which he argues shows Archambault's testimony to be so unreliable that he would not have pled guilty had he been aware of its contents. However, the record shows Gregory did review the witness testimony contained in the preliminary hearing transcript and Archambault's polygraph statement to Agent Pankratz. It is clear that he had access to substantial evidence gathered by the state from many sources, the weight of which tended to implicate him in the murder. Under these circumstances, Gregory was not unduly prejudiced by his inability to review one report allegedly impeaching Archambault's credibility.

We find that petitioner knowingly and voluntarily entered into his plea bargain and pleaded guilty to conspiracy to kill Young, and that there was a factual basis on the record for the state court's acceptance of Gregory's plea. We affirm the district court's denial of the petition for a writ of habeas corpus.

Affirmed.