966 F.2d 1148
 Floyd MUSTREAD, Petitioner-Appellant,
v.
Jerry D. GILMORE, as Warden of the Hill Correctional Center
of the Illinois Department of Corrections, and
Neil F. Hartigan, as Attorney General of
the State of Illinois,
Respondents-Appellees.
 No. 91-2615.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 28, 1992.
Decided July 8, 1992.
 
 John H. Bisbee (argued), Macomb, Ill., for petitioner-appellant.
 Nathan P. Maddox (argued), Giffin, Winning, Cohen & Bodewes, Springfield, Ill., for respondent-appellee Gilmore.
 Before POSNER, FLAUM and KANNE, Circuit Judges.
 KANNE, Circuit Judge.
 
 
 1
 In 1986, Floyd Mustread pleaded guilty in an Illinois state court to one count of aggravated battery and two counts of narcotics possession. After exhausting his state remedies, Mr. Mustread filed for a writ of habeas corpus in federal district court. He claimed that his plea to the aggravated battery count was involuntarily procured because the state deliberately withheld certain exculpatory information from him and his attorney. He alternatively alleged that his attorney may have been aware of this information but never told him about it--conduct which, in Mr. Mustread's view, amounted to ineffective assistance of counsel. The district court rejected both contentions and denied Mr. Mustread's petition. We affirm.
 
 I.
 
 2
 For the sake of brevity, we will recount only those facts essential to the issues on appeal. Floyd Mustread shot and seriously wounded his wife Kathy (now ex-wife) during a marital dispute in their trailer-home on August 20, 1985. Kathy provided the police with two statements indicating that her husband had intentionally shot her twice with a bolt action rifle, and based on this information Mr. Mustread was charged with attempted murder. In the months leading up to his trial, however, Kathy began telling the state prosecutor, William Poncin, that she would testify to quite a different story if called to the stand--that the rifle was fired "accidentally" during a struggle with her husband. Realizing this might present a considerable snag to the state's case, Poncin offered Mr. Mustread the opportunity to plead to aggravated battery, an offense which--unlike attempted murder--included the possibility of probation. Mr. Mustread accepted the deal and entered a plea of guilty to the lesser charge.
 
 
 3
 Then Mr. Mustread did an about-face. After being sentenced to a four-year term of imprisonment, he filed a motion to withdraw all his guilty pleas on the grounds that the state coerced him to plead guilty. When that motion was denied, he challenged his pleas in other state courts, both on direct appeal and collateral attack. These efforts similarly met with no success, so he sought federal habeas corpus, basing his petition for relief on two grounds: first, he claimed that his plea to aggravated battery was involuntarily procured because Mr. Poncin never informed him or his trial counsel, Craig Pierce, that Kathy Mustread was thinking about testifying to the "accidental" version of the shooting; second, he alternatively asserted that Mr. Pierce may have been told about Kathy's everchanging story, but that Mr. Pierce never relayed that information to him--the failure of which constituted ineffective assistance of counsel in violation of the sixth and fourteenth amendments.
 
 
 4
 On May 2, 1991, the district court conducted a separate evidentiary hearing on Mr. Mustread's contentions, and after weighing the testimony of Mr. Mustread, defense counsel Mr. Pierce and state's attorney Mr. Poncin, it concluded as follows:
 
 
 5
 How do I characterize all of this or what interpretation do I place on all these things? As I have said earlier, the prosecutor was wrong, acted wrongly. He violated the discovery rules. I believe that the prosecutor did tell Mr. Pierce of the accidental version, that he was on full notice of it. Even though he had not been given a police report or a summary by the prosecutor, he was in full possession of the fact that she intended to testify to an accidental version.
 
 
 6
 There is also a dispute between Mr. Pierce and his client as to whether or not that information was conveyed by Mr. Pierce to Mr. Mustread. I believe that it was. As I said, I realize there is a dispute of fact about that. I resolve that dispute of fact by finding that information was conveyed.
 
 
 7
 With the finding that the exculpatory information had been conveyed to his attorney and to him, Mr. Mustread's petition for a writ of habeas corpus was dismissed.
 
 II.
 
 8
 Mr. Mustread advances three arguments on appeal. He first contends that the district court erroneously found that both he and his attorney Mr. Pierce knew about the exculpatory nature of Kathy Mustread's testimony. Next he maintains that Mr. Pierce's representation amounted to ineffective assistance of counsel, since no attorney in Mr. Pierce's shoes would have let Mr. Mustread plead guilty if they knew his wife would testify to an accidental version at trial. Finally, he argues that he is entitled to collateral relief simply on the grounds that the state violated his due process rights by defaulting on its obligation to reveal all exculpatory information relevant to his case. See Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We address each point in turn.
 
 
 9
 Since Mr. Mustread's initial contention focuses on the district court's fact findings, we begin by clarifying the appropriate standard of review over those findings. This is not a paper case where the district judge based his determination of "voluntariness"--a mixed question of law and fact--solely on a state court record which is equally available to us. If that were so, it is not altogether clear whether we should apply a deferential or plenary standard of review. Compare Stewart v. Peters, 958 F.2d 1379, 1381-82 (7th Cir.1991) (mixed questions of law and fact in habeas cases would be more appropriately reviewed under a deferential standard) and Hanrahan v. Greer, 896 F.2d 241, 244 (7th Cir.1990) (same), with Holland v. McGinnis, 963 F.2d 1044, 1050 (7th Cir.1992) (voluntariness is a legal question requiring de novo review in habeas cases) and Pharr v. Gudmanson, 951 F.2d 117, 120 (7th Cir.1991) (same). That concern need not detain us here, however, for the district court below dismissed Mr. Mustread's petition only after conducting an evidentiary hearing in which it made its own independent credibility determinations. Hence our task is easier--we review the district court's assessment of credibility simply for clear error. Anderson v. City of Bessemer, 470 U.S. 564, 574-75, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518 (1985); United States v. Brown, 900 F.2d 1098 (7th Cir.1990). We see no clear error here.
 
 
 10
 To begin with, a review of the record fully supports the district court's finding that Mr. Pierce knew Kathy Mustread might testify to an accidental version of the shooting. Throughout the evidentiary hearing, Mr. Pierce repeatedly testified that while he was aware the state was having some "difficulty" with Kathy Mustread, he did not know precisely what the difficulty was. But the following exchange, which took place at a discussion of the proposed plea agreement, suggests that Mr. Pierce knew quite a bit more than his concessions explicitly acknowledge:
 
 
 11
 MR. PONCIN: Your Honor, the reasons the People are asking the Court to concur in this plea agreement are as follows: On August 21st of 1985, and again on August 24th of 1985, the victim in this case, Kathy Mustread, gave tape recorded statements to Deputy John Carson, giving on both occasions a consistent account of what happened in the trailer of the Defendant on August 20th of 1985. On July 15th of 1986, I met with Kathy Mustread in Terre Haute, Indiana for the purpose of preparing for trial, and at that time she gave me a substantially different account of what happened on the night of August 20th of 1985. She indicated that she had planned to testify in accordance with the substantially different account. If she testifies in that manner, I feel it will undermine the prosecution's ability to successfully prosecute the Defendant for the offenses of Attempted Murder and Armed violence....
 
 
 12
 THE COURT: Mr. Poncin, could you be at all more specific as to the difference in the two versions that you indicate the witness gave you, that is--
 
 
 13
 MR. PONCIN: Yes, your Honor, I could. This involves myself and Kathy Mustread. May I ask a question of the Court, I am prepared to proceed in any event, but would it be possible for me to meet alone with the Court and the court reporter and explain those reasons to the Court without Mr. Pierce or the Defendant present?
 
 
 14
 MR. PIERCE: Your Honor, in order to serve your ruling, you may not need it, if I could give my defense at this time, I think it would more than explain what he is talking about.
 
 
 15
 Mr. Pierce indicated that the "defense" which he believed would obviate the need for an ex parte conversation was the accidental shooting story--and that's exactly what he proceeded to explain during the hearing. Either Mr. Pierce directly knew about Kathy Mustread's waffling, or he made such a determination on inferences from information provided to him.
 
 
 16
 Mr. Pierce certainly had the opportunities to learn about Kathy's new story. At the evidentiary hearing, he acknowledged that he had met with Kathy on several occasions prior to the plea hearing. He also stated that he had previously reviewed the prosecution's statement of facts which would ultimately serve as a factual basis for the plea. That statement--read aloud at the plea hearing in the presence of both Mr. Mustread and Mr. Pierce--provided in relevant part:
 
 
 17
 I believe first of all at trial that Kathy Mustread would testify that on August 20th of 1985 ... Kathy Mustread and Floyd Mustread struggled for possession of the rifle and during this struggle the rifle discharged and when the rifle discharged Kathy was struck with a bullet in the lower abdominal area, she fell to the floor and that Floyd Mustread panicked and fled from the trailer at that time.
 
 
 18
 Mr. Pierce could not have received a clearer signal of Kathy's testimony than this. When coupled with his statements made during the plea discussion, Mr. Pierce's claim of insufficient knowledge of Kathy's changed testimony lacks credibility--as Judge Mihm so found.
 
 
 19
 Mr. Mustread's assertion that he was unaware of these circumstances is even less plausible than his attorney. The record makes it unmistakably clear that the unreliable, "wild card" nature of Kathy's testimony is what led Mr. Mustread to accept the plea, rather than risking trial on a non-probational offense. As Mr. Pierce testified during deposition:
 
 
 20
 We [Pierce and Mustread] discussed the reality of jail quite a few times and the reality of possible probation if certain situations were there and that he could get a not guilty if she didn't testify at all or if she testified that it was an accident. We discussed all those aspects. Floyd just couldn't trust her. That's why his final decision was to take an open plea to probational stuff. The day she was going to testify even though we got a letter from her, he didn't know for sure if pressured what she would say on the stand.
 
 
 21
 We therefore hold that the district court did not commit clear error in finding that both Mr. Pierce and Mr. Mustread were aware of the possibility that Kathy might testify to an accidental version of the shooting.
 
 
 22
 We next turn to Mr. Mustread's claim of ineffective assistance of counsel. The law is well-settled that such claims are reviewed under the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1983). United States v. Slaughter, 900 F.2d 1119, 1124 (7th Cir.1990). A defendant must first show that his or her counsel's performance was below an objective standard of reasonableness so as to create a constitutional deficiency; and, second, that there exists a reasonable probability that the deficiency prejudiced the outcome. Strickland, 466 U.S. at 687-688, 104 S.Ct. at 2064-65; Slaughter, 900 F.2d at 1124.
 
 
 23
 Mr. Pierce's recommendation that Mr. Mustread plead to aggravated battery did not amount to ineffective assistance of counsel. As we have already noted, Mr. Pierce knew that Kathy was wavering as to what story she would tell; he knew that Mr. Mustread did not completely trust Kathy to testify to an accidental version of the shooting; and he knew that Mr. Mustread wanted at least a chance at probation rather than risking trial on a charge with a mandatory sentence of imprisonment. Given these circumstances, Mr. Pierce's conservative suggestion to avoid trial certainly seems reasonable, and conceivably was the best course of action available to Mr. Mustread. We therefore hold that Mr. Pierce's representation was consistent with that required by the sixth amendment.
 
 
 24
 We likewise reject Mr. Mustread's final contention that Mr. Poncin's failure to disclose the fact that Kathy was wavering is a per se due process violation warranting reversal. Mr. Poncin's conduct, to be sure, is indefensible in light of Brady v. Maryland; Kathy's purported testimony was exculpatory and material, and thus under Brady the state should have told the defense about such information without delay. But, in the instant case, Mr. Pierce and Mr. Mustread knew full well what Kathy was telling the prosecution all along, and they utilized that information in formulating Mr. Mustread's decision to plead guilty to the lesser charge. Hence, any error by Mr. Poncin's Brady violation was harmless. See Hughes v. Hopper, 629 F.2d 1036, 1040 (5th Cir.1980), cert. denied, 450 U.S. 933, 101 S.Ct. 1396, 67 L.Ed.2d 367 (1981) (although nondisclosure of an exculpatory investigative report constituted a Brady violation, reversal was not required where petitioner's trial counsel had the substance of the report and used it during trial).
 
 
 25
 The other claims raised by Mr. Mustread are meritless and warrant no discussion.
 
 III.
 
 26
 Accordingly, the district court's denial of the petitioner's writ of habeas corpus is AFFIRMED.