989 F.2d 502
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Juan C. CRUZ, Petitioner-Appellant,
v.
Charles B. MILLER, Respondent-Appellee.
 No. 92-3141.
 United States Court of Appeals, Seventh Circuit.
 Argued March 2, 1993.
Decided March 23, 1993.
 
 Before RIPPLE, KANNE and ILANA D. ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Juan C. Cruz, who is serving a twenty-three year sentence for robbery, brought this petition for habeas corpus relief under 28 U.S.C. § 2254, alleging that his guilty plea was involuntary because he misunderstood the nature of the charge against him, and because the state trial court failed to explain the elements of that charge during the plea proceeding. The district court found that the plea satisfied all constitutional requirements and dismissed the petition. We affirm.
 
 I.
 
 2
 On May 2, 1983, after drinking at a local bar, Juan Cruz accompanied Daniel Morgan to the apartment of Morgan's former landlord. Morgan told Cruz he was going to "borrow some money" from the landlord who lived nearby. When they reached the landlord's apartment, they found the door unlocked, and Cruz followed Morgan inside. Morgan called out to the landlord and walked into the landlord's bedroom.[1] Once inside the bedroom, Morgan began to beat the landlord with a leather glove containing a metal hockey puck. When the landlord started to get up, Morgan gave the glove to Cruz and told him to hit the landlord. Cruz refused but gave the glove back to Morgan, who resumed the beating until the landlord died. Morgan took $400 from two envelopes that were in the landlord's dresser and split it with Cruz, who left the apartment with Morgan.[2] Cruz and Morgan went to a bar where, for the next several hours, they paid for drinks with the stolen money and played pool.
 
 
 3
 On May 12, 1983, Cruz was charged by information with murder and with murder in the perpetration of a robbery. On November 30, 1983, Cruz pled guilty to robbery pursuant to the Indiana accessory liability statute.[3] Pursuant to the plea agreement, the State recommended a twenty-three year sentence, and Cruz agreed to testify against Morgan.
 
 
 4
 During the guilty plea hearing, the following colloquy took place between the sentencing judge and Cruz:
 
 
 5
 COURT: ... [I]f you plead guilty here today to that amended information, you are not only incriminating yourself, you thereby convict yourself. You are telling the Court, yes, I committed the crime of robbery as set forth in the amened [sic] information. In that on or about the 3rd day of May, 1983, that I, Juan Carlos Cruz, did then and there unlawfully, feloniously, knowingly or intentionally take property, to-wit: Money, from another person or from the presence of said other person, to-wit: Walter Cieslak, and in the commission of the said taking I did then and there use or threaten the use of force on Walter Cieslak, and as a proximate result of the commission of the said taking the said Juan Carlos Cruz did then and there and thereby unlawfully and feloniously cause bodily injury to the said Walter Cieslak. You understand that?
 
 
 6
 CRUZ: Yes, sir....
 
 
 7
 COURT: You are pleading guilty to committing a robbery and as a result of the robbery causing bodily injury to the victim. You understand me?
 
 
 8
 CRUZ: Yes, sir.
 
 
 9
 COURT: Now if you participated in that robbery, even though you may not have been the person who, in fact, caused the injury to the victim, if you participated knowingly or intentionally participated in that robbery, then you are equally guilty with the person who, in fact, caused the injury to the victim. In fact, you did not, but again whether you caused the injury or not, if you participated in that robbery, then you are accountable for whatever may have happened during the course of that robbery under our law. You understand that?
 
 
 10
 CRUZ: Yes, sir....
 
 
 11
 COURT: Again as I indicated a moment ago, if you plead guilty here today, you have, in fact, convicted yourself by admitting to the Court that you committed that robbery or participated in that robbery wherein the victim was injuried [sic], sustained bodily injury. You understand that?
 
 
 12
 CRUZ: Yes....
 
 
 13
 COURT: Do you have any question at all about anything I told you? Is there anything that you want me to repeat or you want me to attempt to clarify? I will do so. It is important to you now. You are the person up here that is facing twenty-three (23) years imprisonment, if I accept your plea. Is there anything you do not understand? Now is the time for you to tell me.
 
 
 14
 CRUZ: I understand.
 
 
 15
 Following this colloquy, the prosecutor read into the record the statement Cruz gave to the police. It contained these questions and answers:
 
 
 16
 QUESTION: What do you know about this homicide?
 
 
 17
 ANSWER: Me and Danny Morgan went to that apartment, but earlier I had met Danny Morgan about 9 p.m. on Monday in a tavern on Broadway and Hemlock. It was a political doing and the beer was free. It was about 11:30 p.m. and we both decided to leave. As we were walking down the street, he mentioned about this old man who he used to rent from, and he told me he had a lot of money. We then walked down the alley and into a yard and then up some back stairs to a second floor apartment.
 
 
 18
 QUESTION: What happened when you got to the second floor apartment?
 
 
 19
 ANSWER: Danny opened up both doors to the apartment. They weren't locked. It was dark except for one light. I don't know if it was the kitchen or bathroom light. I walked in a few feet and Danny kept on walking into the bedroom. I then heard the old man say something, and that's when Danny start [sic] beating him. I don't know how many times he hit him but it was a lot of times. After that, Danny turned on a little lamp, then Danny started going through some drawers. He found two envelopes with some money in it. He then came out to the dining room, took the money out of the envelopes and started counting the money on the dining room table. He counted all the money and then he split the money between us.
 
 
 20
 QUESTION: Do you remember in what denominations the bills were?
 
 
 21
 ANSWER: They were all twenty (20) dollar bills when we split the money.
 
 
 22
 QUESTION: When you entered the house, did you know where the man was?
 
 
 23
 ANSWER: He had to be in his bedroom. I don't know if he was in bed or not, but when I saw him he was laying on the bed.
 
 
 24
 QUESTION: When you saw him on the bed, was he covered up with the covers?
 
 
 25
 ANSWER: No, he was laying across the bed on his back. He wasn't covered. I remember seeing his legs.
 
 
 26
 QUESTION: Did the old man ever say anything to both of you?
 
 
 27
 ANSWER: He didn't talk except the time when we first went into the room.
 
 
 28
 QUESTION: Did you ever pick up the glove and hit the old man with it?
 
 
 29
 ANSWER: I'm pretty sure I didn't.
 
 
 30
 QUESTION: Did you ever have possession of the glove in the apartment?
 
 
 31
 ANSWER: When Danny was counting the money, he handed me the glove. Then the old man was getting up and Danny told me to go and hit him. I then handed the glove back to Danny, and Danny went back into the bedroom and hit the man again.
 
 
 32
 QUESTION: Did either you or Danny Morgan attempt to aid the old man?
 
 
 33
 ANSWER: No.
 
 
 34
 Cruz next recounted the details of the robbery to the judge. His account was consistent with the statement he gave to the police.
 
 
 35
 The judge then read to Cruz, for the second time, the amended information charging him with robbery, reiterating that "under the theory of accessory [liability], they [the State] would have to show that you ... participated in that crime." The judge again questioned Cruz regarding his understanding of the charge, the truthfulness of his statement to police, and his understanding of the English language and of the legal terms used by the court. At each instance, Cruz responded that he understood the proceedings. Cruz's counsel also responded affirmatively when asked if Cruz knew what he was doing.[4]
 
 
 36
 At the end of the hearing, the sentencing judge concluded that Cruz was an accomplice to the robbery, and that a factual basis existed for his guilty plea. The sentencing judge accordingly accepted the plea and sentenced Cruz to twenty-three years in prison.
 
 
 37
 On November 20, 1984, Cruz petitioned for post-conviction relief in the Indiana state courts, alleging that his guilty plea was involuntary. At the evidentiary hearing held on his petition, Cruz was the sole witness to testify. He testified that he mistakenly believed that his mere presence in Morgan's landlord's apartment made him guilty as an accessory to the robbery. The post-conviction judge, who was also the judge who presided at the guilty plea hearing, disbelieved Cruz's testimony and denied his petition after entering findings of fact and conclusions of law. On March 8, 1990, the Indiana Appellate Court affirmed the judge's decision, and the Indiana Supreme Court later denied Cruz's petition for transfer.
 
 
 38
 On November 18, 1991, Cruz filed the instant federal petition for a writ of habeas corpus which the district judge dismissed, concluding on de novo review that the guilty plea was voluntary and met the constitutional requirements of Boykin v. Alabama, 395 U.S. 238 (1969). This appeal followed.
 
 II.
 
 39
 Under 28 U.S.C. § 2254(d), we defer to factual findings of state courts adequately supported by the record, and in so doing, we are not limited to express factual findings, but can rely on any resolution of factual disputes fairly inferred from that record. Sumner v. Mata, 449 U.S. 539, 547 (1981); Andersen v. Thieret, 903 F.2d 526, 529-30 (7th Cir.1990); Bryan v. Warden, Indiana State Reformatory, 820 F.2d 217, 221 (7th Cir.), cert. denied, 484 U.S. 867 (1987). On the other hand, questions of law and mixed questions of fact and law, such as whether a guilty plea is voluntary, are generally subject to plenary review. Marshall v. Lonberger, 459 U.S. 422, 431-32 (1983); Bobo v. Kolb, 969 F.2d 391, 396 (7th Cir.1992); United States v. Wildes, 910 F.2d 1484, 1485-86 (7th Cir.1990). This standard has come under criticism when, as in this case, the district court makes a determination of "voluntariness" on a paper record equally available to us. Stewart v. Peters, 958 F.2d 1379, 1382 (7th Cir.), cert. denied, 113 S.Ct. 239 (1992); Mustread v. Gilmore, 966 F.2d 1148, 1150 (7th Cir.1992). Nevertheless, we need not resolve this question here because Cruz's claim fails even under plenary review.
 
 III.
 
 40
 Guilty pleas "are accorded a great measure of finality." Blackledge v. Allison, 431 U.S. 63, 71 (1977). The defendant bears the burden of pursuasion regarding the voluntariness of a plea after it has been entered. United States v. Marx, 930 F.2d 1246, 1250 (7th Cir.1991) (citing Wildes, 910 F.2d at 1486), cert. denied, 112 S.Ct. 1480 (1992). A guilty plea is valid only if it is knowing and voluntary. Parke v. Raley, 113 S.Ct. 517, 523 (1992); Boykin v. Alabama, 395 U.S. 238, 242 (1969). This means the plea must have a basis in fact, and the defendant must admit to that basis in fact. Marx, 930 F.2d at 1250 (citing United States v. Frye, 738 F.2d 196, 199 (7th Cir.1984)). But a defendant also must receive "real notice of the true nature of the charge against him," Henderson v. Morgan, 426 U.S. 637, 645 (1976) (quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941)), and possess an understanding of "the law in relation to the facts," McCarthy v. United States, 394 U.S. 459, 466 (1969); see Stewart, 958 F.2d at 1381 & 1385. The standard is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Parke, 113 S.Ct. at 523 (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)).
 
 
 41
 Cruz argues that his lack of understanding of the accessory liability charge, compounded by the sentencing judge's failure to inform him of the elements of that charge and how they applied to his situation, and by the judge's failure to explain to him the word "participate" and to indicate possible defenses, made his guilty plea involuntary. However, the Indiana Appellate Court, after reviewing the transcripts from the guilty plea and post-conviction hearings, found that Cruz understood the charge against him.[5] This factual finding is fairly supported by the record, and is entitled to deference under 28 U.S.C. § 2254(d). The conduct to which Cruz admitted, both in his statement to the police and in his testimony at the guilty plea hearing, constituted participation in the crime: he stayed in the landlord's apartment well aware of the events which were taking place; he handed the murder weapon to Morgan to continue the beating; he took half of the proceeds from the robbery for his own use; and he spent several hours with Morgan after the robbery occurred.[6] See Gregory v. Solem, 774 F.2d 309, 315-16 (8th Cir.1985), cert. denied, 475 U.S. 1088 (1986). The unavoidable inference from this evidence is that Cruz did understand that more than mere presence at the scene of the crime was required. Moreover, Cruz repeatedly responded to the sentencing judge that he understood the charge against him. Cf. Nash v. Israel, 707 F.2d 298, 302 (7th Cir.1983). His responses are presumed to be truthful. Marx, 930 F.2d at 1252.
 
 
 42
 The Indiana Appellate Court's factual finding is buttressed by the legal presumption that counsel advised Cruz of the charge and of its application to him.[7] Stewart, 958 F.2d at 1286. Cruz offered no evidence to rebut this presumption, other than to point, without elaboration, to counsel's request that the sentencing judge explain accessory liability, and to the complexity of the charge.[8] In Cruz's case, it is appropriate to presume that he had notice of the charge.[9] The transcript of the post-conviction hearing contains Cruz's affirmative responses when asked by the prosecution whether his lawyer "thoroughly discussed" his plea with him and explained accessory liability.[10] There is no argument that counsel was ineffective. Stewart, 958 F.2d at 1386; Frye, 738 F.2d at 199; Gregory, 774 F.2d at 316. And Cruz did not seek to introduce the testimony of his counsel at the post-conviction hearing regarding the information he was given.[11] Stewart, 958 F.2d at 1386.
 
 
 43
 Cruz blames the sentencing judge for not explaining the elements of accessory liability and how they applied to him. True, the judge did not recite the technical elements of that offense; however, he did attempt, on at least two occasions, to give Cruz a less formal explanation of the charge. In all events, the judge was not required to provide such an explanation. Id.[12] Cruz also blames the judge for not explaining the word "participate" to him. Despite his lack of experience in the criminal justice system, a person of Cruz's intelligence would know what "participation" meant and that it was more than simply "being there."[13] Cf. Nash, 707 F.2d at 302 n. 6. Moreover, he never claimed that he lacked the mental capacity to understand the proceedings. See Stano v. Dugger, 921 F.2d 1125, 1142 (11th Cir.), cert. denied, 112 S.Ct. 116 (1991); cf. Gaddy, 780 F.2d at 945. Finally, Cruz blames the judge for misleading him about his defenses, but he fails to indicate what these defenses were or how he was misled.
 
 
 44
 Cruz's reliance on Nash v. Israel, 707 F.2d 298 (7th Cir.1983), is misplaced. In Nash, the petitioner participated with three others in a murder. Although the petitioner did not actually kill the victim, he was present at the scene. The petitioner was charged under Wisconsin law as a party to the crime of first degree murder. Such a charge is a form of accomplice liability which contains an intent element. The petitioner pled guilty but subsequently challenged his plea on collateral review.
 
 
 45
 We held that the petitioner's guilty plea was invalid. First, the petitioner expressly told the trial judge that he did not understand the charge. Despite his confusion, the judge never attempted to elicit from the petitioner the reason for the confusion. Second, the factual basis for the plea was inadequate because the record failed to show that the petitioner had a culpable state of mind. Third, the judge's explanation of the charge was insufficient to convey its elements and the manner in which the petitioner's conduct satisfied those requirements.
 
 
 46
 This case is distinguishable from Nash. Cruz did not express confusion about the charge against him, but rather stated at his guilty plea hearing that he fully understood it. Cf. Nash, 707 F.2d at 302. Nor did he dispute the factual basis for his plea.
 
 IV.
 
 47
 Because Cruz understood the accessory liability charge, his guilty plea was voluntary and complied with due process. The judgment of the district court is accordingly AFFIRMED.
 
 
 
 [1]
 Cruz's location during the robbery and murder was in dispute. At his post-conviction hearing, Cruz testified that he remained in the dining room while Morgan beat the landlord in the bedroom. In his statement to police, however, Cruz said that "[h]e [the landlord] didn't talk, except the time when we first went into the bedroom." The post-conviction judge found that Cruz "was in fact in the victim's bedroom during the robbery." The Indiana Appellate Court, noting the discrepancy, found that Cruz "remained in the victim's home" while the robbery and murder took place
 
 
 [2]
 Whether Cruz actually took the money was also in dispute. At his post-conviction hearing, Cruz testified that Morgan "thrust" the money into his pocket. However, in his statement to police, Cruz said, "They were all twenty (20) dollar bills when we split the money." The Indiana courts found that the two men "split" the money
 
 
 [3]
 Indiana Code § 35-41-2-4 defines accessory liability as follows: "A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person (1) has not been prosecuted for the offense; (2) has not been convicted of the offense; or (3) has been acquitted of the offense."
 
 
 [4]
 This colloquy took place between counsel and the court:
 COURT: Mr. Shaps, you dealt with your client here for some period of time. Do you feel there is any language barrier at all?
 COUNSEL: No.
 COURT: Is there any reason you know of why he would not understand what we are doing here today?
 COUNSEL: No.
 COURT: And you gone [sic] over this matter very careful [sic] and you feel this is a voluntary act on his part here today in pleading guilty?
 COUNSEL: Yes.
 
 
 [5]
 This finding was implicit in the Indiana Appellate Court's opinion affirming the denial of post-conviction relief. The Indiana Appellate Court stated, "[Cruz] contends he did not realize his conduct did not constitute participation. However, the facts of the case defeat this argument." It stated further that "[t]hroughout the proceedings Cruz indicated his understanding."
 
 
 [6]
 In order to be guilty as an accessory under Indiana law, a defendant must intend to facilitate the commission of the crime by the principal offender. Fortson v. State, 385 N.E.2d 429, 434 (Ind.1979). However, it is unnecessary to show that the defendant personally participated in the commission of every element of the crime. Jones v. State, 536 N.E.2d 267, 270 (Ind.1989). Although mere presence at the crime scene, standing alone, is insufficient to sustain a conviction for accessory liability, it may be considered with other evidence tending to show participation in the crime. Menefee v. State, 514 N.E.2d 1057, 1059 (Ind.1987). Other factors include the defendant's failure to oppose the crime, his companionship with the person engaged in the crime, and his course of conduct before, during and after the crime. Cary v. State, 469 N.E.2d 459, 461-62 (Ind.1984)
 
 
 [7]
 See Henderson, 426 U.S. at 647:
 Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.
 
 
 [8]
 See, e.g., Worthen v. Meachum, 842 F.2d 1179, 1183 (10th Cir.1988) (presumption of actual notice applied when defendant offered no evidence to rebut it), overruled on other grounds, Coleman v. Thompson, 111 S.Ct. 2546 (1991); see also, e.g., Bonvillain v. Blackburn, 780 F.2d 1248, 1251 (5th Cir.), cert. denied, 476 U.S. 1143 (1986); Gregory, 774 F.2d at 316
 
 
 [9]
 For other cases applying the presumption, see, e.g., Nelson v. Callahan, 721 F.2d 397, 401 (1st Cir.1983); Gregory, 774 F.2d at 315; Bonvillain, 780 F.2d at 1250; Worthen, 842 F.2d at 1183; Oppel v. Meachum, 851 F.2d 34, 38 (2d Cir.), cert. denied, 488 U.S. 911 (1988); Stewart, 958 F.2d at 1386
 
 
 [10]
 At the hearing, the state asked Cruz if he "thoroughly discussed this matter with [his] attorney." Cruz answered "yes." The state asked further:
 QUESTION: And did he not discuss with you the theory of the case or the theory of the state that they were going to proceed against you on?
 ANSWER: No, he just was telling me how much time I would be facing.
 QUESTION: Did he tell you what the state was accusing you of doing?
 ANSWER: Yes.
 QUESTION: The state was accusing you of being an accomplice, is that correct?
 ANSWER: Yes.
 For cases applying the presumption of actual notice when the defendant has discussed his plea with counsel, see, e.g., Oppel, 851 F.2d at 38; Worthen, 842 F.2d at 1183; Davis v. Butler, 825 F.2d 892, 893 (5th Cir.1987); Gregory, 774 F.2d at 316.
 
 
 [11]
 Following the hearing, the state sought, unsuccessfully, to reopen the case by producing Cruz's counsel as a witness to refute the contention that Cruz was unaware of the charge against him. However, Cruz's counsel did not testify
 
 
 [12]
 See also Gaddy v. Linahan, 780 F.2d 935, 944 (11th Cir.1986); McGuirk v. Fair, 622 F.2d 597, 598 (1st Cir.), cert. denied, 449 U.S. 882 (1980)
 
 
 [13]
 At the time of his arrest, Cruz was twenty-seven years old, had a high school equivalency degree and no prior felony record